# CHARLESTON.

## DUNHAM v. WESTERN UNION TELEGRAPH Co.

Submitted January 20, 1920.  Decided January 27, 1920.

1.  ACTION ON THE CASE—*Matters in Confession and Avoidance Provable Under General Issue.*

    In an action of trespass on the case defendant may with few exceptions, prove under the general issue matters in confession and avoidance.  (p. 427).

2.  TELEGRAPHS AND TELEPHONES—*Lawful Conditions of Contract Provable Under General Issue.*

    In an action of tort brought by the addressee of a telegram for damages for failure to deliver it, the telegraph company may prove as defenses, under the general issue, any reasonable and lawful conditions of the contract between the company and the sender.  (p. 427)

3.  SAME—*Conditions in Contract Against Liability for Mistake or Negligence Beyond Valuation Valid.*

    The Act of Congress of June 18, 1910, declaring telegraph companies to be common carriers and subject to the federal statutes regulating interstate commerce, and authorizing them to make a reasonable and just classification of messages transmitted by them, into day, night, repeated, unrepeated, letter, commercial, press, government, and to charge different rates for the different classes of messages, warrants such company in inserting, as a condition of its contract with the sender of a message that, in no event shall it be liable for damages "for any mistakes or delays in the transmission or delivery, or for the non-delivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of Fifty Dollars, at which amount this telegram is hereby valued,

unless a greater value is stated in writing hereon at the time the telegram is offered to the Company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent thereof." Such a condition is a reasonable regulation within the purview of the federal statute.   (p. 429).

4.   SAME—*Condition Limiting Free Delivery Limits Valid.*

A condition in a contract for the transmission of a telegram, prescribing free delivery limits to the radius of one mile in cities of 5,000 population or more, and to one-half mile in smaller towns, is a reasonable regulation.   (p. 433).

5.   SAME—*Conditions Limiting Time for Presentation of Claim Valid.*

A condition in such contract relieving a telegraph company from liability for damages, unless the claim therefor is presented in writing within sixty days is also a reasonable and valid regulation.   (p. 432).

6.   SAME—*Conditions in Contract Binding on Addressee.*

All just and reasonable conditions and regulations, prescribed in a contract between a telegraph company and the sender of a message, are binding on the addressee, whether his action to recover damages for breach of duty be in tort, or in assumpsit on the contract.   (p. 432).

Error to Circuit Court, Wood County.

Action of trespass on the case by W. W. Dunham against the Western Union Telegraph Company.   Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Fitzpatrick, Campbell, Brown & Davis,* for plaintiff in error.
*S. O. Prunty* and *Brown & Blizzard,* for defendant in error.

WILLIAMS, PRESIDENT:

The Western Union Telegraph Company prosecutes this writ of error to a judgment recovered against it by W. W. Dunham in an action of trespass on the case for failure to deliver a message sent to him at Parkersburg, W. Va., over defendant's lines from Cleveland, Ohio, by Mildren & Son.

Said Dunham is an oil and gas well driller residing in Parkersburg, and claims he had a contract of employment with Mildren & Son, at $6.00 per day, to drill a gas well for them as soon as they should erect the rigging and make the necessary

preparations for drilling.  Pursuant to a previous understanding between them, and as soon as the rigging was completed, Mildren & Son delivered to defendant at its office in Cleveland, on the 27th of October, 1914, the following telegram, and prepaid the charges for the transmission and delivery thereof to plaintiff in Parkersburg, viz:

"W. W. Dunham,

1724 Oak, Street, Parkersburg, W. Va.

"Ready to work Thursday morning Pilgrim Farm Riverside . Drive north of Kammes.

J. M. Mildren."

The message was not delivered to plaintiff nor to any member of his family at his residence, and learning from another source that Mildren & Son had delivered to defendant in Cleveland a message to be sent to him, about the 27th of October, he inquired at defendant's office in Parkersburg on the 4th of November following, and was handed the message by one of its agents. This was after seven o'clock P. M., and he left Parkersburg by train the next morning for Cleveland.  On his arrival there he learned that Mildren & Son, having received no reply to their message, had employed another driller in his place and, therefore, could not give him employment.  He was permitted to prove, over defendant's objection, that he made unsuccessful efforts to obtain other employment; that his contract for service with Mildren & Son was at $6.00 per day for the period required to drill the well, which was shown to require forty days; and that the expenses of his trip to Cleveland and return, including his board, were $9.04.  He recovered judgment for $249.04.

Complaint is made (1) of the court's rejection of three special pleas tendered by defendant; (2) the admission of improper testimony over the objection of defendant; and (3) of the giving of certain instructions to the jury on behalf of the plaintiff and the refusal to give certain others offered by defendant.

The special pleas set up certain conditions, printed on the blank form of telegram, made a part of the contract between defendant and the sender of the message.  It was not error, in any event, to reject the special pleas, because, if the matters averred were valid defenses, they were provable under the gen-

eral issue. The action is trespass on the case, wherein the general issue is "not guilty", which is merely a denial or traverse of the facts alleged. Logically speaking, the issue would seem to confine the defense to such denial. But, say Stephen and Chitty, there has been a relaxation of the rule or principle, similar to that which has taken place in actions of assumpsit, and now, under the plea of not guilty, defendant may not only contest the truth of the declaration, but, (with certain exceptions not applicable here), may make any defenses that tend to show plaintiff has no right of action, although they are in confession and avoidance of the declaration. Andrew's Stephen's Pleading, Sec. 118; 1 Chitty on Pleading, 490; and *Ridgeley* v. *Town of West Fairmont,* 46 W. Va. 445.

Defendant offered no evidence and at the conclusion of plaintiff's evidence moved the court to exclude it, which motion the court overruled and defendant excepted. Depositions of certain witnesses had been taken by defendant which, not being offered by it, were read by the plaintiff. The original telegram was identified by Mr. J. M. Mildren, the sender of it, and filed with his deposition. On the face of it there appeared the following words printed in full face type: "SEND the following Telegram, subject to the terms on back hereof, which are hereby agreed to." The conditions that are material here are the following:

"1. The Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of an UNREPEATED telegram, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any REPEATED telegram, beyond fifty times the sum received for sending the same *unless specially valued;* nor in any case for delays arising from unavoidable interruption in the working of its lines; *nor for errors in cipher or obscure telegrams.*

"2. In any event the Company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the non-delivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of FIFTY DOLLARS, at which amount this telegram is hereby valued, unless a greater value is stated in writing hereon at the

time the telegram is offered to the Company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. thereof.

"4. Telegrams will be delivered free within one-half mile of the Company's office in towns of 5,000 population or less, and within one mile of such office in other cities or towns. Beyond these limits the Company does not undertake to make delivery, but will, without liability, at the sender's request, as his agent and at his expense, endeavor to contract for him for such delivery at a reasonable price.

"6. The Company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the telegram is filed with the Company for transmission."

This was an unrepeated, interstate message, upon which no value was placed other than that stipulated in the conditions printed on the back of the telegram and referred to in the face thereof as the contract between the sender and the defendant company. The wrong complained of is its failure to deliver the message to the sendee. No excuse is offered for its neglect of duty, but it insists that its liability is limited by the terms of the contract to forty-six cents, the rate charged and paid by the sender for transmitting the message, and in no event could its liability exceed fifty dollars. By the Act of Congress of June 18, 1910, telegraph companies doing an interstate business are declared to be common carriers and subject to the federal statute regulating interstate commerce. The act authorizes them to classify messages into day, night, repeated, unrepeated, letter, commercial, press, government, and such other classes as are just and reasonable, and to charge different rates for the different classes of messages.

Until Congress exercised its jurisdiction over telegraph companies by the passage of that Act, the states had the right, under their police power, to impose penalties upon them for neglect of duty, provided their duty to the general public was not thereby materially interfered with. *Western Union Tel. Co.* v. *Commercial Milling Co.*, 218 U. S. 407; *Western Union Tel. Co.* v. *White,* 113 Va. 421, 74 S. E. 174. But since Congress has entered the field, as it had the right to do under the Interstate

Commerce. clause of the Constitution, and has provided for their regulation, its jurisdiction is necessarily exclusive, and supersedes all state legislation or state laws attempting, in any manner, to regulate them. The states are bound to adhere to the law respecting their regulation as it is fixed and determined by the federal authorities. There had been, until recently, great diversity of opinion among the state courts respecting the provisions of a contract by a telegraph company, similar to those here involved, some courts holding them void on the ground of public policy, as an attempt to protect itself against its own negligence. But the Supreme Court of the United States, by a recent decision, has settled the question, by holding, in effect that such provisions are valid and binding under the Act of Congress to regulate commerce above referred to. *Postal-Telegraph Cable Co.* v. *Warren-Goodwin Lumber Co.,* decided December 8, 1919, and reported in "Advance Opinions", published by Lawyers Cooperative Pub. Co., dated January 1, 1920. That case was taken to the Supreme Court of the United States on writ of certiorari to the Supreme Court of the State of Mississippi. The question presented in the state court was one of damages for an error in transmitting an unrepeated message, and, following an earlier decision of its own in *Dickerson* v. *Western Union Tel. Co.,* 114 Miss. 115, 74 So. 779, that court held that the provision of the contract, limiting the liability of the telegraph company to a sum equal to the price paid for transmission of the message did not relieve it from liability for the actual loss occasioned by its negligence, and rendered judgment for $125.28. The Supreme Court of the United States reversed the judgment, and Chief Justice White, who delivered the opinion, after quoting from the aforesaid Act of Congress, which authorizes the classification of messages into specific classes, and further into "such other classes as are just and reasonable", and permits different rates to be charged for the different classes of messages, after referring to said provisions of the Act, says: "It would seem unmistakably to draw under the Federal control the very power which the construction given below to the Act necessarily excluded from such control." As persuasive authority in support of his opinion, the learned Chief Justice cites the case of *Cultra* v. *Western Union Tel. Co.,* decided by the Interstate

Commerce Commission, 44 Inters. Com. Rep. 670. In the conclusion of its report in that case the Interstate Commerce Commission holds that it was the intention of Congress, by the amendatory act of 1910, to give said commission jurisdiction and control over the "rates and practices of interstate telegraph companies, as well as the rules, regulations, conditions, and restrictions affecting their interstate rates; that the rate voluntarily used by the senders of the message in question was an unrepeated rate to which was lawfully attached, as a fundamental feature of it, the restricted liability insisted upon here by the defendant; that the Congress has expressly authorized such rates with a restricted liability attached; that such rates are not therefore contrary to public policy but on the contrary are binding upon all until lawfully changed; and that neither the interstate rates of the defendant nor the rules, practices, conditions, and restrictions affecting those rates have been shown in this proceeding to be unreasonable or otherwise unlawful." As we interpret the opinion of the Supreme Court of the United States in the case above cited it settles the question, not only as to the exclusive jurisdiction of Congress over the subject of interstate messages, but also as to the validity and binding effect of the terms of the contract in this case, limiting defendant's liability for negligence in failing to deliver the message. Numerous other decisions by the highest courts of many of the states, in harmony with that decision, are also cited in the opinion, some of which are, *Western Union Tel. Co.* v. *Bilisoly,* 116 Va. 562, 82 S. E. 91, which appears to be one of the first decisions rendered after the passage of the amendatory act of June 18, 1910; and *Gardner* v. *Western Union Tel. Co.,* 231 Fed. 405. See also *Western Union Tel. Co.* v. *Bolling,* 120 Va. 413, 91 S. E. 154.

The valuation placed upon a message for the purpose of determining the liability of the telegraph company is similar, in effect, to a valuation agreed to by the shipper of an article of merchandise, for the purpose of fixing the liability of the carrier, in case of its loss or damage, and it has been generally held that such an agreement, fairly made, is binding. 2 Michie on Carriers, pp. 1058-1059; 1 Hutchinson on Carriers, section 5, pp. 389-390; *C. & O. Ry. Co.* v. *Rebman,* 120 Va. 71; *Adams Express*

*Co.* v. *Byers,* 117 Ind. 33; and *Baum* v. *Long Island Railroad Co.,* 108 N. Y. S. 1013.

The 6th condition above quoted, relieving the company from liability for damages and statutory penalties, unless the claim is presented in writing within sixty days after the telegram is filed with the Company for transmission, is sustained by the weight of authority as a reasonable regulation. 3 Sedgwick on Damages, section 876; and Jones on Tel. & Tel. Cos., section 386. One reason justifying such a provision, says Mr. Jones, section 387, "is found in the multitude of messages transmitted requiring a speedy knowledge of claims to enable the company to keep an account of its transactions before, by reason of their great number, they cease to be within their recollection and control." Similar provisions in freight contracts are upheld. *C. & O. Ry. Co.* v. *McLaughlin,* 242 U. S. 142, and cases cited in the opinion. Sixty days and even a much shorter time, is uniformly held to be reasonable in such cases. Jones on Tel & Tel. Cos., section 386. Such a provision, says Mr. Jones, section 386, does "relieve the company somewhat from being held for some alleged liability, about which it would be unable to make a proper and expedient defense."

Although this is an action of tort brought by the addressee, and not a suit on the contract, nevertheless these conditions, being reasonable regulations, are binding on the addressee as well as the sender. But the decisions on this point are in hopeless conflict. Some of the courts make it depend on the character of the action which the receiver of the message happens to bring, holding that, in actions of assumpsit, a contract exists between him and the company, made by the sender as his agent having implied authority from him. While this is entirely logical, we hardly think the rule should be made to depend on the form of action. A plaintiff may bring either tort or assumpsit, and, although his cause of complaint may be the same in either case, the measure of his damages is often affected by the character of action. The present action is tort, and we think the rule should be applied notwithstanding, for the reason, given in many cases of like character, that such provisions, when reasonable, are determinative of the company's duty to the public, regardless of any contractual relation. It should certainly be held to no

greater degree of liability to the receiver of a message, nor liable under different conditions than it had contracted with the sender it should be, when such conditions are reasonable. The following authorities support this view: *Sykes* v. *Telegraph Co.,* 150 N. C. 431; *Telegraph Co.* v. *Mellon,* 96 Tenn. 66; *M. M. Stone & Co.* v. *Telegraph Co.,* 31 R. I. 174, 29 L. R. A. (N. S.) 795; *Russell* v. *Telegraph Co.,* 57 Kan. 230; *Telegraph Co.* v. *Dant,* 42 App. D. C. 398, L. R. A. 1915, B. 685; *Halsted* v. *Telegraph Co.,* 104 N. Y. S. 1016; *Findlay* v. *Telegraph Co.,* 64 Fed. 459; *Telegraph Co.* v. *Waxelbaum & Co.,* 113 Ga. 1017; and *Coit* v. *Telegraph Co.,* 130 Cal. 657.

No such timely notice as is stipulated for was proven, and the suit was not instituted until nearly a year after the cause of action arose.

Provision No. 4 prescribing the free delivery limit to one-half mile from the company's office in towns of five thousand population or less, and to one mile in larger cities and towns is also a reasonable regulation, and, therefore, binding on both the sender and addressee of the message. Jones on Tel. & Tel. Cos., section 302. But the company in this instance may have waived its right to insist upon this provision. Plaintiff's evidence tends to prove, that it had been defendant's custom to make free delivery at his place and in his neighborhood, although he testified the distance was a mile, or a mile and a quarter.

The court should have sustained defendant's motion to exclude plaintiff's testimony to prove a contract of employment at $6.00 per day to drill a well. In view of the limited liability, this evidence was inadmissible.

It is not necessary to discuss the assignments relating to the instructions, as the opinion disposes of all the questions arising thereon.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*