ERMA WILLIAMS

*v.*

CHRYSLER CORPORATION

(No. 12281)

Submitted May 5, 1964.          Decided June 30, 1964.

656

*Preiser, Weaver & Daugherty, George A. Daugherty,* for appellant.

*Jackson, Kelly, Holt & O'Farrell, W. T. O'Farrell, Robert L. Elkins, John L. McClaugherty,* for appellee.

BROWNING, JUDGE:

Appellant, Erma Williams, purchased a new Dodge automobile, manufactured by Chrysler Corporation, from Tag Galyean, Inc., in June, 1959. Shortly thereafter, on August 2, 1959, while operating it with Mabel Lester as a passenger, the automobile was wrecked, allegedly as a result of a defective tie-rod. Lester instituted an action in the Court of Common Pleas of Kanawha County to recover for personal injuries against appellant, Tag Galyean, Inc., and Chrysler Corporation. Appellant answered and cross-claimed against Chrysler Corporation, though such answer and cross-claim is not contained in the record before this Court. Numerous other pleadings were filed by the various parties and sundry proceedings had, which will not be set forth here inasmuch as they do not bear directly upon the issue here presented. Chrysler Corporation then moved for summary judgment dismissing the cross-claim of appellant against it on the ground that no genuine issue of fact existed and that it was entitled to judgment as a matter of law, filing in support of the motion the affidavit of Roy V. Bolyard and a copy of the automobile purchase contract executed by appellant.

Bolyard, in his affidavit, stated that he was the salesman employed by Tag Galyean, Inc., who sold the automobile to appellant, and that appellant executed an automobile purchase contract, filed therewith, containing the following provision:

"7. It is expressly agreed that there are no warranties, express or implied, made by either the dealer or the manufacturer on the motor vehicle, chassis or parts furnished hereunder except as follows:

"The manufacturer warrants each new motor vehicle . . . , chassis or part manufactured by it to be free from defects in material or workmanship under normal use and service. Its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall . . . be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties expressed or implied, and all other obligations or liabilities on its part . . . ."

The trial court sustained the motion for summary judgment, the order reciting that ". . . the Court having had the benefit of the trial of the action in which the jury was unable to agree upon a verdict . . .", which action, on appeal, was affirmed by the Circuit Court of Kanawha County, the circuit judge stating in his opinion, made a part of the record herein, ". . . Apparently the Court of Common Pleas based its decision on *Payne* v. *Valley Motor Sales, Incorporated* (W. Va. 1962), 124 S. E. 2d 622. It is to be noted that in the Payne case the action was brought upon the warranty of the automobile dealer and did not sound in tort. In the instant case the cross-claim sounds wholly in tort, based upon negligence, and makes no reference to any warranty. Under these circumstances it seems to be well settled in West Virginia that the manufacturer is liable only where the product is inherently dangerous . . . ."

As heretofore noted, the cross-complaint of appellant is not before us but it is asserted by counsel for both par-

ties in brief and argument, and noted by the circuit court in its opinion, that the cross-complaint "sounds wholly in tort". Thus the issues presented on this appeal are whether the language in the purchase contract heretofore quoted is sufficient to bar a negligence claim by a purchaser against a manufacturer and, if not, whether appellant may recover on such a claim in the absence of privity.

It is contended by counsel for the appellant in brief and argument that the sole question before this Court in this case is whether the rule of *MacPherson* v. *Buick Motor Company* (1916), 217 N. Y. 382, 111 N. E. 1050 (hereinafter referred to as the *MacPherson* case), is applicable in this state, and he cites decisions of this Court and of two federal courts interpreting the law of this state in support of his contention that this Court has adopted the rule of the *MacPherson* case. However, counsel for the appellee contends that this Court does not reach the rule of the *MacPherson* case in deciding the issues presented upon this appeal and cites the very recent decision of this Court in *Payne* v. *Valley Motor Sales, Inc.*, 146 W. Va. 1063, 124 S. E. 2d 622 (hereinafter referred to as the *Payne* case), as controlling the principal issue presented upon this appeal. Counsel for the appellee further contends that if that issue be reached the rule of the *MacPherson* case is not applicable inasmuch as there is privity of contract between the plaintiff Williams and the Chrysler Corporation, relying principally upon the language of the contract heretofore quoted.

Perhaps in order that the issues before this Court be presented in their true perspective, reference should be made to the English case of *Winterbottom* v. *Wright,* 10 M. & W. 109, 152 Eng. Reprint 402, decided in 1842 (hereinafter referred to as the *Wright* case). This state came into existence twenty-one years after the decision of the *Wright* case, but Article VIII, Section 21, of our Constitution provides that the common law in existence at the time of the adoption of our Constitution shall, unless changed by the Legislature, be and remain the law of this jurisdiction. Succinctly, the *Wright* case held that if A. and B. entered into a contract, C. could not maintain an

action or suit against A. whether it be ex contractu or ex delicto inasmuch as there was no privity between A. and C. Lord Abinger stated in the opinion of the *Wright* case that if it should ever be held that C. could successfully maintain an action or suit against A. under those circumstances there would result "the most absurd and outrageous consequences, to which I can see no limit,". It was held in the *MacPherson* case that the purchaser of an automobile from a dealer who had in turn purchased the automobile from the General Motors Corporation could maintain an action for injury received while operating the automobile if the purchaser of the vehicle could by a preponderance of the evidence prove that the injury resulted from the wrecking of the automobile, which in turn had been caused by the negligent manufacture of the vehicle. An article by William L. Prosser, Dean, School of Law, University of California, entitled "The Assault Upon the Citadel", 69 Yale Law Journal 1099 (1960), is quoted from at length by counsel for the appellant in his brief. If the author of that article is correct in his appraisal of the decisions of the different courts of this country upon this question, there remains only "two highly unlikely exceptions" to the *MacPherson* rule —that being the states of Mississippi and Virginia. Inasmuch as West Virginia is one of the other forty-eight states it is apparent into which classification Dean Prosser has placed us.

There can be no doubt that this Court and all of the other courts of last resort of this country have established exceptions to the rule laid down in the *Wright* case. The most general of these exceptions, and one apparently adopted by this Court, is to the effect that the seller of a chattel owes to any person who might be expected to use it a duty of reasonable care in its manufacture if the chattel is "inherently" or "imminently" dangerous. Perhaps all that the New York Court did in the *MacPherson* case was to extend the exception to the rule by finding that an automobile would fall into the category of being a dangerous instrumentality when it can be said that it will be used by persons other than the initial purchaser and

used without tests being made by the owner to reveal latent defects. Many courts, apparently including this one, have held that explosives and other inherently dangerous chattels, as well as poisonous substances and perhaps other goods manufactured for consumption by individuals, are exceptions to the rule of privity if harm comes to the user of such article and it can be proved that the injury resulted proximately from the negligent manufacture or preparation of such article.

*Peters* v. *Johnson, Jackson & Co.,* 50 W. Va. 644, 41 S. E. 190, was an action of trespass on the case wherein the jury and the trial court found for the defendant but this Court reversed the judgment entered upon the verdict and remanded the case for a new trial. It was alleged in the declaration that the defendants sold to Peters "through his agent by mistake saltpetre for epsom salts, and that the plaintiff having taken the saltpetre, believing it to be epsom salts, became sick and suffered great impairment of health." This is the fourth syllabus point of that case: "Only the parties to a contract can sue for damage from its breach; but where in executing it things of imminently dangerous character are used, from which injury may probably happen to others, the law places him who executes the contract under duty to so perform it as not injure strangers to it, and such strangers may sue for damage coming to them from its negligent performance."

These, briefly, were the facts in the case of *Webb* v. *Brown and Williamson Tobacco Co.,* 121 W. Va. 115, 2 S. E. 2d 898. The Red Jacket Coal Company, a retailer, purchased from the tobacco company a quantity of "Bloodhound" chewing tobacco. The son of the plaintiff purchased a plug of that tobacco from the coal company store "and he permitted his mother to take a chew from the plug so purchased by him". The evidence showed that the portion of the tobacco of which the plaintiff partook contained "a dead worm or moth from which extended numerous fine stickers or stingers, hard and penetrating in their nature, and each about one-eighth of an inch in length", which penetrated the tissues of the plaintiff's mouth causing "great inconvenience and some pain."

This Court affirmed the judgment for the plaintiff upon a verdict of the jury in the sum of $2,000.00. The following statement is contained in the opinion of the *Webb* case: "The proposition that the manufacturer, packer or bottler of food products is liable to a consumer thereof for injury caused by unwholesomeness or unfitness of such product, although purchased from a retailer, seems to be well established by the authorities.", citing cases from other jurisdictions. The Court then stated that although it was originally held that tobacco did not come within the rule, the more recent cases contained the better reasoning in holding that "although chewing tobacco is not a food, it is a product especially prepared for human use or consumption, and that lack of care in manufacturing the same" is "good cause for action on the part of a consumer who may purchase the same from a retailer."

In the case of *Roush v. Johnson,* 139 W. Va. 607, 80 S. E. 2d 857, this Court affirmed a judgment in the sum of $10,000.00 in favor of the administrator of the estate of a deceased person whose death was allegedly caused by the negligence of an independent contractor in installing an electrical wiring system in a place of business although acknowledging the general rule to be that an independent contractor is not liable for injuries sustained by or the death of a third person after the work contracted for has been completed and accepted by the contractee even though injury resulted from the contractor's negligence. It is stated in the opinion that such general rule is subject to certain exceptions and that the facts in this case brought it within one of the exceptions. Quoting from 27 Am, Jur., Independent Contractors, § 56, the opinion states: ". . . 'Furthermore, a contractor may be liable where he turns over work which is inherently or intrinsically dangerous, or, in other words, where the work is turned over in a manner so negligently defective as to be imminently dangerous to third persons, or where he knows of defective conditions of the work, which may not in itself be inherently dangerous; . . . .' " It is interesting to note that the *Wright* case, establishing the privity rule, involved the liability of a contractor and not of a manufacturer or seller.

In *General Motors Corporation* v. *Johnson* (1943), 137 F. 2d 320, it was held that where the employees of the owner of a truck purchased from a dealer and manufactured by General Motors Corporation were injured as a result of negligence in the construction of the truck the manufacturer was liable in a tort action though there was no privity between the injured persons and the manufacturer. That Court was required in that case to apply the law of this state. Similarly, in *Carpini* v. *Pittsburgh and Weirton Bus Company and General Motors Company* (1954), 216 F. 2d 404, a case in which the federal court was also applying West Virginia law, it was held that the negligence of the manufacturer of a passenger bus was liable in tort for the negligent manufacture of such vehicle if such negligence was the proximate cause of injury to passengers traveling on such bus. However, we are cited to no decision by this Court nor do we find any directly in point. Apparently the only West Virginia case in which the *MacPherson* decision is mentioned is *Saena* v. *Zenith Optical Co.* (1951), 135 W. Va. 795, 65 S. E. 2d 205. It was held in that case that no presumption of negligence in the manufacture or inspection of a chattel arises from the mere fact of an injury arising out of the use of the article even though it be imminently dangerous. This is a quote from that opinion: "Decisions of this Court dealing with similar cases are to the same effect . . . . One of the leading cases considering the questions arising in this type of case is *MacPherson* v. *Buick Motor Co.,* . . . ."

The *Payne* case arose out of an injury to the purchaser of a truck from a local dealer wherein it was alleged that because of a defect in the vehicle a wreck occurred injuring the owner and driver. There was a special warranty and the action was one that prior to the adoption of the rules of civil procedure would have been considered an action ex contractu. This is a quotation from that warranty: "This warranty is expressly in lieu of all other warranties, express or implied, and of all other obligations or liabilities on the part of Dealer, except such obligation or liability as Dealer may assume by its Authorized Ford Dealer's Service Policy or separate written in-

strument. . . ." The first point of the syllabus in that case is as follows: "Effect will be given to an express warranty as written where it specifically excludes implied warranties and limits amount of damages." In discussing the question of whether the plaintiff, by accepting the special warranty, was excluded from the benefits of any implied warranties, the Court stated in the opinion that "It must be recognized immediately that there are two distinct and conflicting lines of authority on this question. One line of authority, which has largely arisen within the last few years, holds that the warranty of the type involved in the present case, which has been in general use by automobile dealers and manufacturers since perhaps the early 1920's, is so unfair to the purchaser that as a matter of public policy no effect will be given to many of its provisions, including the provision which eliminates all implied warranties and the provision which eliminates any chance of securing damages greater than those measured by the value of the defective part." After citing and quoting from the opinions of cases from other jurisdictions in which it was held that as a matter of public policy no effect would be given to the provisions of a special warranty excluding all implied warranties, this paragraph appears in the opinion: "In contrast to the somewhat limited number of cases holding the automobile dealer's and manufacturer's express warranty to be void in limitations of damages and in the exclusion of implied warranties, the number of cases holding that strict effect is to be given to the terms of an express warranty excluding implied warranties or limiting recoverable damages is legion, and some of these cases, although recognizing the inequalities of the situation from the buyer's standpoint, have remarked that correction of the evil is a legislative, not a judicial duty." It was held in that case, and the opinion so states, that while "Many of the majority line of cases have held as a matter of law" that where there is an express warranty all implied warranties are excluded "except that of title, whether the express warranty says that it so excludes them or not." Thereafter the Court says: "However, the so-called 'liberal rule', adopted in this State, is that the implied war-

ranties are not excluded where an express warranty exists if they are not inconsistent with the express warranty.", citing authority.

Inasmuch as an act of the Legislature designated Uniform Commercial Code, Chapter 193, Acts of the Legislature, Regular Session, 1963, was passed March 6th of that year, effective July 1, 1964, perhaps the following quotation from the *Payne* opinion is significant: "It should also be pointed out that the Uniform Sales Act had been adopted and was part of the statute law of the states wherein the doctrine of public policy was used in connection with allowing implied warranties to be considered. The Uniform Sales Act, being a part of the statute law in those states, had specific provisions pertaining to implied warranties, and liberalized the law pertaining thereto. The Uniform Sales Act has not been adopted by the legislature in this State and we have no statutory provisions with regard to implied warranties wherein they could come within the principle that they were a 'child of the law' in this connection as used and applied in the cases referred to herein allowing recovery based on public policy." Of course, this action arose prior to the passage of the act above mentioned and by coincidence this opinion will be handed down at about the time that act will become effective. It will be noted that the provisions of the Uniform Sales Act with regard to express and implied warranties have been incorporated in and made a part of the Uniform Commercial Code.

This Court does not, of course, intimate what the decision in this case would be if the Uniform Commercial Code had been in effect at the time of the wreck which resulted in this litigation. Even if the provisions of the act were not directly applicable, we would be among those states "wherein the doctrine of public policy was used in connection with allowing implied warranties to be considered" as stated in the *Payne* case. A cursory examination of the warranty contained in the contract between the parties, the pertinent provisions of which have been heretofore quoted, is sufficient to reveal its restrictiveness and the necessity of giving the ultimate

owner of a vehicle protection of either a judicial or legislative nature. The manufacturer could safely advertise that its cars were covered by a warranty for five years or fifty thousand miles of driving whichever event occurred first. If because of a defective wheel a new car was wrecked killing or injuring its five occupants the magnanimous manufacturer would replace the defective wheel if it were returned to its factory "with transportation charges prepaid and which its examination shall disclose to its satisfaction" that the wheel was "thus defective". It would be presumptious to predict what action this Court would take if such a suppositious case were before it.

However, there can be no doubt that this language of the express warranty between the plaintiff and the defendant clearly and conclusively precludes the plaintiff from maintaining this action: ". . . this warranty being expressly in lieu of all other warranties *expressed or implied, and all other obligations or liabilities on its part. . . .*" (Italics supplied.) The rule seems to be well established in this jurisdiction that a party to a valid contract may in advance limit its liability so long as one of the parties thereto is not a common carrier or where the negligent act which was in futuro exempted did not amount to wilful, wanton or gross misconduct. *Dunham v. Western Union Telegraph Co.,* 85 W. Va. 425, 102 S. E. 113; *Zouch v. C. & O. Ry. Co.,* 36 W. Va. 524, 15 S. E. 185; and authorities cited in the opinions of those cases. This is the sixth syllabus point of the *Dunham* case: "All just and reasonable conditions and regulations, prescribed in a contract . . . are binding on the addressee, whether his action to recover damages for breach of duty be in tort, or in assumpsit on the contract."

It is the decision of this Court that the judgment of the Circuit Court of Kanawha County must be affirmed under the authority cited herein and for the reasons stated in this opinion. This decision is based wholly upon the finding that the express warranty or disclaimer between the parties is controlling and that this action cannot be maintained. We do not find it necessary, therefore, to de-

termine whether the rule in the *MacPherson* case should be adopted or rejected in a case where, upon the facts, there is no express warranty and the action is between the owner of an automobile and the manufacturer of such vehicle, which the owner secured from an automobile dealer. We simply do not reach that question and it is not decided.

*Affirmed.*