**Robert R. McCLUNG, Plaintiff,**

v.

**FORD MOTOR COMPANY, a corporation, Defendant.**

**Civ. A. No. 599 BK.**

United States District Court,
S. D. West Virginia,
Beckley Division.

Nov. 5, 1971.

---

David J. Joel, Wheeling, W. Va., Pat R. Hamilton, Oak Hill, W. Va., for plaintiff.

Donald D. Hodson, Beckley, W. Va., for defendant.

## MEMORANDUM OPINION

KNAPP, District Judge.

The plaintiff, Robert R. McClung, brought this action to recover damages for injuries caused by the alleged negligent design of a 1965 Ford Mustang manufactured by the defendant, Ford Motor Company. The basis of plaintiff's complaint is that the defendant was negligent in designing the vehicle, made misrepresentations with reference thereto, and breached an express and implied warranty of fitness for the purpose for which the vehicle was intended to be used.

The complaint asserts the plaintiff was involved in a collision with another vehicle in January, 1966, on U.S. Route 19, in Nicholas County, West Virginia, and that as a result of the defendant's negligent design of the vehicle plaintiff was driving, plaintiff was severely injured. In answers to interrogatories filed by plaintiff on March 24, 1969, plaintiff stated that the 1965 Ford Mustang driven by the plaintiff had the following defects in design and manufacture: a rigid steering wheel, a rigid steering column, a non-collapsible steer-

ing wheel and steering column, a steering wheel that was not padded, a horn rim that was not padded nor indented, a shoulder-harness seat belt was not provided, and the lack of seat locks to lock the rear or back portion of the drivers seat into position. The answers to said interrogatories further charge that the injury to plaintiff was a result of the impact between plaintiff and the steering wheel and the steering column. The plaintiff, who was wearing at the time a lap seat belt, was allegedly thrown against the steering wheel and the steering column at impact. This impact allegedly resulted in plaintiff's total blindness.

On October 8, 1969, the defendant, Ford Motor Company, filed its Motion for Summary Judgment on the ground that there was no genuine issue as to any material fact, and that the defendant, as a matter of law under the facts alleged, was not liable to the plaintiff. Depositions of the plaintiff and Clarence S. Bruce, a traffic accident analyst, and interrogatories submitted by defendant and answers made by plaintiff were filed prior to the motion. Both plaintiff and defendant also submitted briefs on the issues of law raised by the motion.

The question before this Court for determination is the nature of the duty which an automobile manufacturer owes to the users of its products. This is an issue of law to be determined by the Court. Evans v. General Motors Corporation, 359 F.2d 822 (7th Cir. 1966), cert. den. 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966). There is no contention in the instant case that the automobile driven by plaintiff was not operational and functional as a mode of transportation and not safe for such use. On the contrary, plaintiff alleges that the defendant's negligent or defective design, while not causing the accident, added to the seriousness or gravity of the injuries. The question of liability of manufacturers in these so-called "second collision" cases, i. e., those cases wherein subsequent to the initial impact of the collision of two vehicles the pas-

senger or driver of one of the vehicles suffers a second collision with the interior of his car, is thus presented to this Court. This question is a novel one in this jurisdiction and the Court is fully aware of conflicting authorities in other jurisdictions. Plaintiff relies primarily on the case of Larson v. General Motors, 391 F.2d 495 (8th Cir. 1968), whereas the defendant relies on Evans v. General Motors Corporation, supra.

In the *Larson* case, supra, plaintiff was injured in a head-on automobile collision. The steering mechanism was pushed backward into plaintiff's head. The Court, in reversing a summary judgment award in favor of the defendant, pointed out that while automobiles are not made for the purpose of colliding with one another, this is a frequent and inevitable contingency of normal automobile use and that no rational basis exists for limiting recovery to situations where the defect and design of the manufacturer was the causative factor of the accident, reasoning that the accident and the resulting injury, usually caused by the so-called "second collision" of the passenger with the interior part of the automobile, is foreseeable.

In Evans v. General Motors Corporation, supra, an action was brought by the personal representative of the decedent's estate to recover damages on the ground that decedent's death was caused by the alleged negligent design of the automobile manufactured by the defendant. The decedent's station wagon was struck by another vehicle whereupon the station wagon collapsed. The station wagon was designed with an "x-frame" which did not have side frame rails to protect the driver involved in side impact collisions. Plaintiff asserted that this was a dangerous and defective condition thus proximately causing the fatal injuries of the decedent. The Court therein found that the manufacturer is not under a duty to make its automobile accident proof or foolproof, nor must the vehicle be rendered more safe merely because the danger to be avoided is obvious to all. The Court further found

that the intended purpose of an automobile does not include participation in collisions with other objects despite the manufacturer's ability to foresee the possibility that such collisions could occur.

■ An examination of the authorities has led this Court to the conclusion that the weight of authority is against the theory presented by plaintiff. It is the duty of the manufacturer to use reasonable care under the circumstances so to design its product as to make it not accident or foolproof, but safe for the functional use for which it was intended, and this requirement includes a duty to design the product so that it will fairly meet emergencies which can be reasonably anticipated. However, a manufacturer is not an insurer that its product is, from the design viewpoint, incapable of producing injury. Willis v. Chrysler Corporation, 264 F.Supp. 1010 (S.D.Texas, 1967). While it is certainly generally recognized that in the course of its use an automobile may be involved in collisions, it is not made with the purpose in mind of its striking, or being struck by, other vehicles or objects, and the duty of the automobile manufacturer does not include the duty to design and construct an automobile which will insure the occupants against injury no matter how it may be misused or bludgeoned by outside forces. Shumard v. General Motors Corporation, 270 F. Supp. 311(1967).

■ In the instant case there was no warranty, expressed or implied, that plaintiff would not be injured if involved in a collision in the 1965 Mustang. Likewise, there was no misrepresentation regarding the safety of the design of the vehicle or the manner in which it was manufactured. There is no allegation that the defendant warranted or represented that the car could engage in a collision in complete safety and that the plaintiff would emerge uninjured. The law does not require a manufacturer to make an automobile that will fully protect its occupants when involved in collisions; and thus the law does not imply that a manufacturer warrants his product to be adequate for that purpose. Shumard v. General Motors Corporation, supra.

The adoption of the legal theory propounded by the plaintiff would impose on the manufacturer of service products a duty not contemplated by the common law, and not founded in reason in view of the impact such a rule would impose on the basic industry in our economic complex. What standards of duty or reasonableness of design could the courts, in their wisdom, require? Who is to determine the design standards to be imposed? The problems presented by such a proposal certainly would require consideration and evaluation of a number of factors, technical and economic, and is a matter that properly should be resolved by the law making bodies who are directly responsible to the people who make up this Republic. If certain requirements for uniform automobile design are to be imposed upon the manufacturers thereof, then it is for the legislative bodies to make such a determination after full consideration of its political and economic implications. To impose liability on the manufacturer of commonly used products on the theory herein advanced would require a radical departure from generally accepted standards in technology, and would encroach, in my humble opinion, on the functions of the legislative branch of the government.

It might further be noted that the West Virginia Supreme Court has, prior to the adoption of the Uniform Commercial Code, held that purchasers, from dealers of automobiles subject to an express warranty limiting liability of the manufacturer to making good defective parts, and providing that such warranty is expressly in lieu of all other warranties, duties and obligations of the manufacturer, may not maintain an action against the manufacturer for personal injuries received as a result of a defect in such automobile, whether the action be based on contract or tort. Payne v.

Valley Motor Sales Inc., 146 W.Va. 1063, 124 S.E.2d 622, Williams v. Chrysler Corporation, 148 W.Va. 655, 137 S.E.2d 225. While the provisions of the Uniform Commercial Code, now in force in West Virginia, would indicate that a manufacturer would be liable for injuries received in an accident caused by some defective operational mechanism of the vehicle, which theory of liability is the prevailing one throughout the country, this rule, even if recognized by the courts in this jurisdiction, would not be applicable here as hereinbefore indicated.

 While the Court fully recognizes the extreme tragedy suffered by the plaintiff and is sympathetic, of course, the Court is under a duty to apply correct principles of law. To be actionable, in the Court's opinion, the vehicle, alleged to have been of a design that makes it unfit for its intended use, must have been of such design and structure as was at variance with, or contrary to, the accepted body of scientific knowledge possessed by the average mechanical or structural engineering personnel in the profession having to do with the manufacture of subject vehicle. The design must have been such as in the application of prevailing engineering and scientific knowledge, it could have been reasonably foreseen that in the course of normal and accepted use of the product so designed, and in anticipation of the violence of collisions that can normally be expected to occur at times, the alleged result here could be reasonably expected. While safety is of course, a vital factor, it is limited by the now present state of technology, by economic considerations and by functional characteristics. At some point the desired social considerations must give way to the expediency of economic and political practicalities. For to seek the absolute in safety which is of vital concern to society and to us all, is to make of the manufacturer an insurer of its product against injury however occurring in the course of its use. The majority of courts have not seen fit to apply this concept to the field of products liability. I do not believe that the theory of liability so advanced is founded in reason or dictated by compelling social or political considerations. Irrespective of the equities of a particular case, or a particular concept, the law must retain a quality of uniformity, practicability and concerned reasonableness if stability in our institutions is to survive.

For the reasons hereinbefore stated, the Court grants defendant's Motion for Summary Judgment. Counsel may prepare an appropriate order incorporating this opinion by reference therein.