**Jo Ann VAN TINE, Administratrix of the Estate of Richard Lee Van Tine, Deceased, Plaintiffs,**

v.

**NISSAN MOTOR COMPANY, LTD., Defendant,**

and

**NISSAN MOTOR CORPORATION IN U. S. A., Defendant and Third-Party Plaintiff,**

v.

**Edward LEWANDOWSKI and Pauline Lewandowski, Third-Party Defendants.**

Civ. A. No. 76–590.

United States District Court, W. D. Pennsylvania.

Jan. 29, 1979.

Louis M. Tarasi, Jr., Pittsburgh, Pa., for plaintiffs.

William L. Standish, IV, Arthur J. Schwab, Thomas F. Weis, Pittsburgh, Pa., for defendant.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

This is a wrongful death and survival action arising out of an automobile collision which occurred in West Virginia on May 11, 1975. Jurisdiction is based upon diversity of citizenship. Presently before the court is the motion for summary judgment of defendant, Nissan Motor Corporation in U.S.A.

The decedent, Richard Lee Van Tine, and three friends, John Wilson, Greg McKown, and Edward L. Lewandowski, Jr., embarked from Pennsylvania on May 9, 1975, for a camping trip in West Virginia. They decided to employ a 1972 Datsun 510 station wagon belonging to Lewandowski's parents. The men camped in West Virginia until Sunday morning and then began the return trip to Pittsburgh. Lewandowski drove and Van Tine was seated in the rear of the vehicle. The accident occurred at approximately 3:30 p. m., during which Van Tine was thrown from the vehicle. He was transported to Garrett County Memorial Hospital for emergency treatment and was later removed to West Virginia University Hospital. Approximately one month later, he was transferred to Pittsburgh Hospital and finally to John J. Kane Hospital where he died on October 3, 1975, from the injuries sustained in the accident.

On April 21, 1976, the administratrix filed a wrongful death and survival action against the driver of the vehicle, Edward Lewandowski, Jr. On September 24, 1976,

the Court of Common Pleas of Allegheny County, Pennsylvania approved a settlement of that action in the sum of $25,000.[1]

Plaintiff Jo Ann Van Tine, Administratrix of the Estate of Richard Lee Van Tine, and a citizen of Pennsylvania, initiated the instant civil action against the manufacturer of the 1972 Datsun station wagon, Nissan Motor Corporation in U.S.A.[2] Relying on the "second collision" theory of liability, plaintiff alleges that, due to defects in the rear door handle and seat belt, the automobile failed to adequately protect the decedent from harm in the collision, and thus were the proximate cause of decedent's injuries and death. Plaintiff's claims are founded on theories of negligence, 402A and 402B of the Restatement of Torts, Second, and breach of express and implied warranties of merchantability. Plaintiff does not claim that defendant was responsible for the accident itself.

Defendant moves for summary judgment contending: (1) the liability of a manufacturer under a "second collision" theory is a question which should be determined by West Virginia law; and (2) West Virginia does not permit recovery for injuries sustained as the result of a so-called "second collision" under negligence, strict liability and warranty theories.

We hold that Pennsylvania law governs resolution of this issue. Since a manufacturer may be held liable under a "second collision" theory under Pennsylvania law, defendant's motion for summary judgment must be denied.

## II. *Discussion*

■ Under accepted principles in diversity cases of this type, a federal court must follow the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). With regard to a manufacturer's liability under a "second collision" theory, we note first that

it is unclear whether a conflict of laws exists between West Virginia and Pennsylvania. Pennsylvania courts have consistently imposed a duty upon a manufacturer to design a crashworthy vehicle. *See, e. g., Hardy v. Volkswagen of America*, 65 F.R.D. 359 (W.D.Pa.1975); *Dyson v. General Motors Corp.*, 298 F.Supp. 1064 (E.D.Pa.1969); *Householder v. General Motors Corp.*, 33 Beaver County Legal Journal 30 (1973). In contrast, the West Virginia courts have never expressly adopted, or rejected, the theory of "second collision" liability for manufacturers.

In *McClung v. Ford Motor Co.*, 333 F.Supp. 17 (S.D.W.Va.1971), aff'd, 472 F.2d 240 (4th Cir. 1973), the United States District Court sitting in West Virginia held that, if faced with the issue, the West Virginia Supreme Court would not impose liability upon a manufacturer in such cases. The continuing validity of *McClung* as a predictor of West Virginia law in "second collision" cases appears doubtful, particularly since several of the cases relied upon in *McClung* have been overruled following that decision. For example, the District Court relied, in part, on the reasoning of *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir. 1966), *cert. denied*, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1967). *Evans* was the leading authority for the position that a manufacturer is not liable in "second collision" situations. However, *Evans* has now been expressly overruled by *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977). Moreover, in attempting to gage the doctrinal trends of the West Virginia courts, the *McClung* court cited *Williams v. Chrysler Corp.*, 148 W.Va. 655, 137 S.E.2d 225 (1964), wherein the West Virginia Supreme Court held that privity was required for an injured party to sue for breach of express or implied warranty. The *Williams* case, however, has similarly been overruled by the West Virginia Supreme Court since *McClung. See, Dawson v. Canteen Corp.*, 212 S.E.2d 82 (W.Va.Sup.Ct.1975).

---

1. See Exhibit A of defendant's motion for summary judgment.

2. Nissan Motor Co., Ltd. was also named as a defendant but was never served with the complaint or summons.

In our judgment, the clear trend of the law establishes the liability of a manufacturer in "second collision" cases,[3] and commentators have been uniformly critical of the cases which have negated liability.[4] However, assuming *arguendo* that West Virginia law does not recognize "second collision" liability, we will proceed to resolve the conflicts of law issue applying Pennsylvania choice of law principles.

Pennsylvania has adopted "interest analysis" to resolve choice of law questions in place of the *lex loci delicti* rule. *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964). Although recent Pennsylvania cases have favored a territorialistic approach, it is clear that interest analysis is initially applicable. Hence, if under that analysis a "false conflict" is demonstrated (only one jurisdiction interested), Pennsylvania law is applied. *See, Melville v. American Home Assur. Co.*, 443 F.Supp. 1064, 1090 (E.D.Pa. 1977), *rev'd on other grounds*, 584 F.2d 1306 (3d Cir. 1978).

In the instant case, all of the relevant contacts, except for the place of the accident, are in Pennsylvania. The decedent, the administratrix and the driver of the vehicle are Pennsylvania residents. The trip originated in Pennsylvania and Van Tine was returning to Pennsylvania when the accident occurred. The car, whose alleged defects are at issue, was purchased and registered in Pennsylvania. West Virginia's only contact with the case, as the situs of the accident, is "purely fortuitous." *See, Griffith v. United Air Lines*, 416 Pa. at 24, 203 A.2d at 806.

Under these circumstances, the case of *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966) mandates application of Pennsylvania law. *Kuchinic* involved an airplane crash in Georgia in which the pilot and three passengers were killed. All were residents of Pennsylvania. The plane was enroute from Miami to Pennsylvania. The question arose concerning the applicability of the Georgia guest-host statute. The Pennsylvania Supreme Court termed the issue a "false conflict" because the situs of the accident was "wholly fortuitous" and only Pennsylvania had a "significant interest in defining the legal consequences attaching to the relationship." 422 Pa. at 624, 222 A.2d at 900.

The instant case is controlled by *Kuchinic*. Pennsylvania has a significant interest in protecting its citizens from defective products. At the same time, application of Pennsylvania law would not appear to offend West Virginia law and policy. Defendant is not a West Virginia corporation. Thus, even if we assume that West Virginia's policy against "second collision" liability represents an intention to protect the manufacturers of that state, defendant is without the protected class.

West Virginia's interest in controlling vehicular operation on its highways is also an insignificant consideration here. The alleged defective design occurred without West Virginia and the fact that tragic results ensued in West Virginia is again a mere fortuity. The causes of the collision are not at issue. Instead, plaintiff alleges that, once the collision occurred, the defect in the product caused the decedent's death. The state of West Virginia has no significant interest in controlling the outcome of this issue.

Accordingly, we hold that Pennsylvania law governs the imposition of "second collision" liability on a manufacturer under the circumstances of this case. Defendants' motion for summary judgment must be denied.

---

**3.** In *Huff v. White Motor Corp., supra* at 110–111, the Seventh Circuit compiled the cases which impose liability with those that do not. As the appendix to that case reveals, over 30 jurisdictions impose liability, while only two do not.

**4.** *See* Nader & Page, *Automobile Design and the Judicial Process*, 55 Cal.L.Rev. 645 (1967); Note, *Manufacturer's Liability for an "Uncrashworthy" Automobile*, 52 Cornell L.Q. 444 (1967); Comment, *Automobile Design Liability Larsen v. General Motors and Its Aftermath*, 118 U.Pa.L.Rev. 299 (1969); Recent Cases, 80 Harv.L.Rev. 688 (1966); Recent Decisions, 42 Notre Dame Lawyer 111 (1966).