**Otto T. KAUFMANN, Administrator of the Estate of Doris Kaufmann, deceased,**

v.

**SERVICE TRUCKING CO., Inc.**

No. 8657.

United States District Court
D. Maryland, Civil Division.

March 16, 1956.

**2**

Joseph T. Brennan, Baltimore, Md., for plaintiff.

Ambrose T. Hartman, Baltimore, Md., for defendant.

ROSZEL C. THOMSEN, Chief Judge.

Plaintiff's decedent, a citizen of Illinois, was killed in Virginia as the result of a collision between her automobile and a truck leased to and operated by defendant, a Maryland corporation. Her domiciliary administrator, appointed in Illinois, has sued defendant in this court under the Virginia Wrongful Death Act, Code of Virginia, 1950, Title 8, secs. 8–633 to 8–640, as amended, basing jurisdiction on diversity of citizenship. Defendant has moved to dismiss the complaint on the ground that under the provisions of sec. 3(c) of Article 67 of the Annotated Code of Maryland, 1951 Ed., a foreign wrongful death statute may not be enforced in the State of Maryland when service of process can be obtained in the jurisdiction where the cause of action arose, as it can in this case under sec. 8–67.1 of the Virginia Code, as amended.

■ However, sec. 2 and all of sec. 3 of Article 67 of the Maryland Code, which are set out below, must be construed together, in the light of the legislative and judicial history of the law governing actions for wrongful death in Maryland and Virginia.

The Virginia statute provides that suit must be brought within one year after the death of the injured party by and in the name of the personal representative of such deceased person; that the jury may award such damages as to it may seem fair and just, not exceeding $25,000, to be distributed to the surviving widow or husband and children and grandchildren, or if there be none such, then to the parents, brothers and sisters; that the sum so awarded shall be free from all debts and liabilities of the deceased; but if there be no such beneficiary surviving, the amount so received by the personal representative shall be assets in his hands to be disposed of according to law. Plaintiff's decedent in this case was survived by her father and mother.

For many years the Court of Appeals of Maryland refused to permit suits in Maryland state courts under statutes substantially similar to the Virginia statute, basing its refusal on the ground of their dissimilarity to the Maryland Wrongful Death Act. Ash v. Baltimore & O. R. Co., 72 Md. 144, 19 A. 643; Dronenburg v. Harris, 108 Md. 597, 71 A. 81; London Guarantee & Accident Co. v. Balgowan S. S. Co., 161 Md. 145, 155 A. 334, 77 A.L.R. 1302; Davis v. Ruzicka, 170 Md. 112, 183 A. 569. However, such suits were permitted in the Federal courts before Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; See Stewart v. Baltimore & O. R. Co., 168 U.S. 445, 18 S.Ct. 105, 42 L.Ed. 537; Weissengoff v. Davis, 4 Cir., 260 F. 16; Rose v. Phillips Packing Co., D.C.D.Md., 21 F.Supp. 485. In Rose v. Phillips Packing Co., Judge Chesnut held that a Virginia administrator could maintain a suit in this court based on the Virginia statute.

In 1937 Maryland passed an act which has been codified as Article 67, sec. 2, of

the Code. Including a 1949 amendment, referred to below, it provides:

"In any action instituted in the Courts of this State where it shall appear that the death of a person has been caused by the wrongful act, neglect or default of a vessel or of another person, firm or corporation, and such wrongful act, neglect, or default shall have occurred outside of the State of Maryland, whether in another State, the District of Columbia or territory of the United States, the Courts of this State shall apply the law of such other state, District of Columbia or territory of the United States, to the facts of the particular case, as though such foreign law were the law of this State, provided, however, that the rules of pleading and procedure effective in the Court of this State in which the action is pending govern and be so applied as to give effect to the rights and obligations created by and existing under the laws of the foreign jurisdiction in which the wrongful act, neglect or default occurred; provided, however, that nothing in this section shall apply to causes of action arising prior to June 1, 1937."

After the passage of this act and after Erie R. Co. v. Tompkins, Judge Chesnut held that the domiciliary administrator of a North Carolina decedent killed in Virginia could maintain an action under the Virginia law in this court against a Maryland citizen. Smith v. Bevins, D.C. D.Md., 57 F.Supp. 760. Judge Chesnut noted *inter alia* that the refusal of the Maryland Court of Appeals to permit suits in Maryland based on the West Virginia and District of Columbia statutes had not been on the ground that the suits were by foreign administrators as such, but because of its policy not to permit suits where the foreign statutes were dissimilar to the Maryland act. This policy was reversed by the Act of 1937. Judge Chesnut also noted that under the Virginia statute the personal representative sues as a statutory trustee for the

beneficiaries listed in the statute, when there are any such, and not upon a cause of action belonging to the testator; that the only contingency on which any recovery for the decedent's estate would be permissible, i. e. when there are no such beneficiaries, was precluded by the facts alleged in the complaint. 57 F. Supp. at page 763. It is similarly precluded in the case at bar by the alleged fact that the decedent was survived by her father and her mother.

The liberal rule that a domiciliary administrator should be allowed to maintain such a suit had been approved by the Fourth Circuit in a careful opinion by Judge Dobie, Rybolt v. Jarrett, 112 F.2d 642. However, as Judge Chesnut said in Smith v. Bevins: "The liberal rule there approved was not applied in the particular case, but only because the court construed the locally applicable West Virginia statute to clearly forbid any suit by a foreign administrator. I find no comparable Maryland statute although those heretofore referred to (Maryland Code, Art. 93, §§ 80–82) doubtless imply that ordinarily a foreign administrator as such may not sue here for the collection of assets belonging to the estate of the decedent. But I find no sufficient reason to imply from these Maryland statutes a prohibition such as was found in the West Virginia statute in the Rybolt case, to positively prohibit a suit of the instant kind by a foreign administrator. The effect of the Maryland amendment of 1937 seems plainly enough to the contrary." 57 F.Supp. 760, at page 765.

In 1947, Sec. 3 was added to Article 67. It provides:

"In all actions instituted in the courts of this State under Section 2 of this Article, the proper person to bring the action shall be determined by applying the following rules:

"(a) Any person who is entitled to bring suit under the laws of the jurisdiction wherein the wrongful death occured [sic] may bring suit

in Maryland, upon proof of his qualifications and authority.

"(b) If the laws of the State wherein the wrongful death occurred provide for suit to be brought in the name of the State, District or Territory, as the case may be, then suit may be brought in Maryland in the name of this State on behalf of the beneficiaries protected under the foreign statute.

"(c) The provisions of this section shall not in any way be construed to apply to actions in which service of process can be obtained in the jurisdiction where the cause of action arose or where the plaintiff resides."

The purpose of the Act of 1947 is not entirely clear. It has never been construed by any court in a published opinion, and neither counsel nor I have ever heard of a case in which it has been invoked. The first two subsections, (a) and (b), seem intended to eliminate possible procedural difficulties, to make clear in whose name a suit authorized by sec. 2 may be brought in the Maryland courts. Between 1937 and 1947 there had been some doubt whether such a suit had to be brought in the name of the State of Maryland, although the foreign statutes directed that it be brought in some other name, such as that of the personal representative or the other state. There had also been some doubt whether a foreign administrator had to qualify in Maryland before he could bring the suit. Those questions had been settled for our court by Smith v. Bevins, but no one could be sure what the Maryland state courts would hold.

Defendant contends that subsection (c) of sec. 3 was intended to prevent the operation of sec. 2 in any case in which service on the defendant could be obtained in the jurisdiction where the cause of action arose or where the plaintiff resides. If that had been the intention, the legislature could have used more apt language to express it. The limitation contained in subsection (c) by its very terms applies only to the provisions of sec. 3 and does not purport to apply to the provisions of sec. 2. Since most states provide for substituted service in automobile cases, the construction of subsection (c) contended for by defendant would make sec. 2 inapplicable in the great majority of cases arising out of automobile accidents in other states. It is hard to believe that the legislature intended to require that such suits against Maryland residents must be brought in a foreign jurisdiction, possibly far from their home, and to prohibit such suits from being brought in the domicile of the defendant. Such an effect should not be given to the act unless its provisions clearly require it.

In 1949 the Maryland legislature re-enacted sec. 2, with an amendment making it apply to the wrongful act, neglect or default of a vessel, as well as of a person, firm or corporation. Both before and after this amendment, sec. 2 has required that the "Courts of this State shall apply the law of such other state * * * to the facts of the particular case, as though such foreign law were the law of this State, provided, however, that the rules of pleading and procedure effective in the Court of this State in which the action is pending govern and be so applied as to give effect to the rights and obligations created by and existing under the laws of the foreign jurisdiction in which the wrongful act, neglect or default occurred; * * *."

Since, as we have seen, the first two subsections of sec. 3 are intended only to eliminate procedural difficulties, such as the qualification of the foreign administrator in Maryland and the use of the name of the state, we would naturally expect the limitation contained in subsection (c) to apply to the same subjects dealt with by the previous subsections of sec. 3. When we examine subsection (c) we find that it does refer to the "provisions of this section", i. e. sec. 3, and not to the provisions of sec. 2, nor to the provisions of Article 67 generally. It was evidently not intended to

limit in any way the rights of a person who already had the right to sue under sec. 2, apart from the provisions of subsections (a) and (b) of sec. 3, such as an administrator qualified in the State of Maryland. By the same token, it should not be construed to apply to a person qualified to sue in this court apart from the provisions of subsections (a) and (b) of sec. 3. A domiciliary administrator, such as the plaintiff in this case, suing as statutory trustee for named beneficiaries, was held to be qualified to sue in this court in 1944, before sec. 3 was added to the Maryland law. Smith v. Bevins, supra. Unless, therefore, the ruling in Smith v. Bevins is not or is no longer good law, the right of the plaintiff to maintain this suit should be sustained.

■ In deciding that question this court must apply the conflict of laws rules prevailing in Maryland, Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; that is to say, this federal court sitting in Maryland should apply the laws of Maryland or the laws of the state where the wrongdoing occurred, just as a Maryland state court would do if the case were before it. Coca-Cola Co. v. Dixi-Cola Laboratories, 4 Cir., 155 F.2d 59. However, no Maryland state court has passed on either sec. 2 or sec. 3 of Article 67, nor stated what the Maryland conflicts rule is on the questions involved.

■ Sec. 2 clearly indicates that the Maryland legislature intends that the Maryland courts shall apply the substantive law of the jurisdiction where the cause of action arose. This is in accord with the general rule "that all matters pertaining to the substantive right of recovery under a wrongful death statute, including the right to recover, the nature of the right, and the party in whom it is vested, are governed by the law of the state where the injury resulting in death occurred." Betts v. Southern R. Co., 4 Cir., 71 F.2d 787, 789.

It appears probable, therefore, that the Court of Appeals of Maryland would hold that the right to recover, the nature of the right, and the party in whom it is vested, are governed by the law of the state where the wrongful act occurred; would construe sec. 3 of Article 67 as intended to eliminate procedure difficulties; and would hold that such procedural matters are governed by the applicable statute or rule of the jurisdiction in which the suit is brought, whether State or Federal. Betts v. Southern R. Co., 4 Cir., 71 F.2d 787; Rybolt v. Jarrett, 4 Cir., 112 F.2d 642; Smith v. Bevins, D.C.D.Md., 57 F.Supp. 760; Goodrich, Conflict of Laws, 1938, sec. 101; Beale, Conflict of Laws, 1935, sec. 396.1; Stumberg, Principles of Conflict of Laws, p. 176; Minor, Conflict of Laws, p. 238. This conclusion is in accord with Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524, and the cases cited therein, since the questions involved in those cases were all matters pertaining to the substantive right of recovery, under the general rule stated by Judge Parker in Betts v. Southern R. Co., 71 F.2d at page 789.

The Virginia Wrongful Death Act indicates that the right of recovery thereunder is vested in the personal representative of the deceased person, for the benefit of designated beneficiaries, if there be any such surviving, otherwise for the benefit of the estate. It does not indicate whether the personal representative referred to should be appointed in the domicile of the decedent, in Virginia (the locus delicti), or in the forum. The question presented in this case is whether a domiciliary administrator appointed in Illinois can maintain an action in this court or any other court under the Virginia statute without qualifying in Virginia. As we have seen, Judge Chesnut held in Smith v. Bevins, in 1944, that such an administrator could maintain such an action in this court. The Fourth Circuit had approved the liberal rule that a domiciliary administrator should be allowed to maintain such a suit, Rybolt v. Jarrett, 112 F.2d 642, and had refused to apply the rule in that case only because the court construed the law

of the forum, West Virginia, to forbid any suit by a foreign administrator.

Several decisions of United States District Courts in Virginia applied the liberal rule to permit actions under the Virginia Wrongful Death Statute by domiciliary administrators who had not qualified in Virginia. Pearson v. Norfolk & W. R. Co., D.C., 286 F. 429; La May v. Maddox, D.C., 68 F.Supp. 25; Reed v. Shilcutt, D.C.1946, 119 F.Supp. 652. Since those cases, and since Smith v. Bevins, however, there has been a change in the Virginia law which must be considered. In 1950 one of the sections of Title 26 of the Code of Virginia, dealing with "Fiduciaries Generally", Chapter 5, "Non-Resident Trustees", etc., was amended to read as follows:

"§ 26–59. No person not a resident of this State nor any corporation not authorized to do business in this State shall be appointed or allowed to qualify *or act as personal representative*, or trustee under a will, of any decedent, or appointed as guardian of an infant or committee of any person non compos mentis, unless there be also appointed to serve with the non-resident personal representative, trustee, guardian or committee, a person resident in this State or corporation authorized to do business in this State; * * *." (Emphasis supplied.)

In Holt v. Middlebrook, 214 F.2d 187, 190, the Fourth Circuit construed this amendment as preventing a foreign administrator who had not qualified in Virginia from maintaining such an action as this in a United States District Court in Virginia, whether the action was brought for the use of certain dependents listed in the Virginia statute, or for the benefit of the deceased's estate in the absence of such beneficiaries. Judge Dobie, speaking for the court, said:

"Whatever may have been the law prior to the Amendment of 1950 to the Virginia Code, we think the addition by that amendment of the words 'or act' in the restrictive statute requires us to affirm the judgment below and to hold that the instant actions must be dismissed. * * *

"Prior to this 1950 amendment, the only way foreign personal representatives were permitted to *act* in Virginia was the bringing of civil actions for death by wrongful act. We conclude, then, the purpose of the Legislature in adding these words 'or act' to the restrictive statute was just to forbid the bringing of such civil actions. * * *"

But bringing an action in this court or any other court in Maryland as trustee for named beneficiaries is not "acting" in Virginia. In Holt v. Middlebrook, Virginia was both the locus delicti and the forum. The 1950 amendment to the Virginia Code, which controlled that case, deals with fiduciaries acting in Virginia generally and not with the Virginia Wrongful Death Act. Neither that amendment nor the decision in Holt v. Middlebrook requires that a personal representative must qualify in Virginia before he can bring suit in Maryland under the Virginia Wrongful Death Statute on behalf of the father and mother of a decedent. Smith v. Bevins is still good law.

It follows that the plaintiff is entitled to maintain this action, and that the motion to dismiss the complaint must be denied.

It is so ordered.