Donna Fae **DEBBIS**, Administratrix of the Estate of James A. Debbis, Deceased, for her benefit as surviving widow and for the benefit of Leroy Patterson and Rickey Patterson, surviving infant dependent stepsons, and Tammy S. Debbis and Mary Z. Debbis, surviving infant dependent daughters, of James A. Debbis, Deceased, and also for the benefit of the Estate

v.

The **HERTZ CORPORATION**, a body corporate of Delaware.

Civ. No. 17609.

United States District Court
D. Maryland.

June 1, 1967.

672

Sol J. Friedman, George W. White, Jr., and Buckmaster, White, Mindel & Clarke, Baltimore, Md., for plaintiffs.

Paul M. Higinbothom, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

This suit is brought by Donna Fae Debbis, a Maryland resident, as adminis-

tratrix of the estate of James A. Debbis, deceased. Mrs. Debbis, suing for her own benefit as widow, and for the benefit of the two infant stepsons and two infant daughters of the deceased, claims loss of support and services and seeks damages therefor in the amount of $175,-000. Mrs. Debbis also asks damages in the amount of $25,000 for pain and suffering of her husband between the times of his injury and his death, for damages to his automobile, and for funeral and medical expenses.

Plaintiff alleges that on September 3, 1965 her husband was operating his automobile on a public highway near Charles Town, West Virginia; that he stopped for traffic near the entrance to Shenandoah Downs Race Track; that the automobile at the wheel of which he was seated was struck from the rear by a second automobile owned by defendant and rented by it on September 3, 1965 to one Bobby Staton; that the rental agreement was entered into at defendant's place of business in Arlington, Virginia; that the automobile was operated, with Staton's permission and with Staton sitting in the right front seat, by one Yurisic; and that plaintiff's husband subsequently died on September 7, 1965 from injuries sustained in the September 3rd accident. The complaint also states that Yurisic claimed at the time of the collision that the brakes of the rented vehicle were defective. Plaintiff contends that defendant as lessor breached an implied warranty of fitness of the automobile and also that defendant negligently rented the automobile with the brakes in an improper condition.

The complaint does not disclose where Mr. Debbis died or in what state letters of administration were issued to his widow. However, during oral argument, the Court was informed that Mr. Debbis died in a hospital in Maryland and that letters were issued to Mrs. Debbis in Maryland. Memoranda and oral argument have also disclosed that Staton and Yurisic are, respectively, residents of Arlington and Falls Church, Virginia.

Defendant has moved to dismiss the complaint on the grounds that: (1) the case is governed by the laws of Virginia which do not permit any damages to be awarded to the stepsons, or any recovery for funeral or medical expenses, and which limit damages below the amounts sought by plaintiff in this case; (2) no recovery is possible for breach of an implied warranty of fitness because of lack of privity of contract; and (3) this suit should have been brought in Federal District Court in Virginia (presumably for the Eastern District of Virginia) rather than in this Court, pursuant to 28 U.S.C. § 1391(f). Plaintiff contends that West Virginia law applies and that it permits recovery for funeral and medical expenses. Plaintiff concedes that the stepsons may not recover under either the Virginia or West Virginia wrongful death statutes. Defendant, replying, says that if West Virginia law applies, it does not permit plaintiff, a Maryland administratrix, to bring this suit in this Court.

In this diversity case this Court looks to the conflict of laws rules prevailing in Maryland. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Maryland conflicts rule in wrongful death cases is set forth in Section 2 of Article 67 of the Maryland Code, which states:

In any action instituted in the courts of this State where it shall appear that the death of a person has been caused by the wrongful act, neglect or default of a vessel or of another person, firm or corporation, and such wrongful act, neglect, or default shall have *occurred outside of the State of Maryland*, whether in another state, the District of Columbia or territory of the United States, the courts of this State shall apply the *law of such other state*, District of Columbia or territory of the United States, to the facts of the particular case, as though such foreign law were the law of this State, provided, however, that the rules of pleading and procedure effective in the court of this State in which the action

is pending govern and be so applied as to give effect to the rights and obligations created by and existing under the laws of the foreign jurisdiction in which the wrongful act, neglect or default occurred; * * *. [6 Md.Ann. Code art. 67, § 2 (1967 Replacement Vol.)] [Emphasis added]

There apparently are no Maryland or other reported opinions applying Section 2 to a multi-state situation such as exists in this case, in which the alleged negligent action or omission of defendant with regard to the brakes of the rented car occurred in Virginia, the accident and injury took place in West Virginia and death followed in Maryland. However, the general rule is that the law of the state where the injury resulting in death occurred determines the rights and liabilities of the parties in an action for wrongful death. Betts v. Southern Ry. Co., 71 F.2d 787, 789 (4th Cir. 1934); King v. Cooper Motor Lines, 142 F.Supp. 405 (D.Md.1956); Kaufmann v. Service Trucking Co., 139 F. Supp. 1 (D.Md.1956). See also, Tramontana v. S.A. Empresa, 121 U.S.App. D.C. 338, 350 F.2d 468, 473–475 (1965); Huber v. Baltimore & Ohio R. R. Co., 241 F.Supp. 646 (D.Md.1965); State of Maryland ex rel. Thompson v. Eis Automotive Corp., 145 F.Supp. 444 (D.Conn. 1956); Restatement of Conflict of Laws §§ 377 and 391. (1934); Annot., 77 A.L.R.2d 1266, 1273, 1287 (1961); H. Goodrich, Conflict of Laws 263–64 (3d ed. 1949).

In White v. King, 244 Md. 348, 223 A.2d 763 (1966), the Court of Appeals of Maryland considered a case in which residents of Prince George's County, Maryland, sued another resident of the same county, in the Circuit Court of that county, for injuries sustained in Michigan when the defendant, as the host-driver of the automobile in which plaintiffs therein were riding as guests, apparently fell asleep at the wheel. The Maryland trial court applied Michigan law and directed a verdict for the defendant at the conclusion of the plaintiffs' case on the grounds that under the Mich-igan Guest Statute there was not sufficient evidence of gross negligence or willful and wanton misconduct of defendant to enable the case to go to the jury. After noting that the doctrine of lex loci delicti has been applied in the past by the Court of Appeals of Maryland, that that doctrine has been criticized by eminent authorities in the field of conflict of laws, that a new rule has been proposed in Restatement (Second) of Conflict of Laws § 379 (Tent. Draft No. 9, 1964) and that the rule or modifications thereof have been adopted by the courts of some of the states, Judge Oppenheimer, speaking for the Court of Appeals of Maryland, held under the facts of the case that Michigan law was applicable and affirmed the decision of the trial court. See also, Earl v. Anchor Pontiac Buick, Inc., 229 A.2d 412 (Court of Appeals of Maryland, filed May 12, 1967).

The Restatement of Conflict of Laws § 391, comment b at 479 (1934), currently provides that:

b. It is the law of the place of wrong (see § 377) and not that of the place where the defendant's conduct occurs or the place of death, which governs the right.

Section 377 of the Restatement defines the place of wrong as the "state where the last event necessary to make an actor liable for an alleged tort takes place." A revision of these rules has been proposed in Restatement (Second) of Conflict of Laws § 391 (Tent. Draft No. 9, 1964). That suggested redraft reads as follows:

In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern.

Comment f under the proposed new Section 391 states:

On rare occasions, conduct and injury will occur in different states. In such

instances, the local law of the state of injury will usually govern. Situations will, however, arise when the state where the conduct occurred has the most significant relationship with the parties and with the occurrence and when therefore this state provides the governing law. Such situations, however, constitute an exception to the general rule.

\* \* \* \* \* \*

On rare occasions when conduct and injury occur in different states, a state which is neither the state of conduct nor of injury may nevertheless be the state which has the most significant relationship with the occurrence and the parties and which is therefore the state of the governing law.

■ In this case, Maryland may well have the most significant relationship with the parties, since the widow and children of the decedent are residents of the State of Maryland and since the de-

fendant is a corporation which is admittedly qualified to do business in Virginia and Maryland, and though the record does not so affirmatively disclose, presumably also is qualified in West Virginia. However, Section 2 of Article 67 of the Maryland Code, and the recent pronouncements of Maryland's highest Court in the *White* and *Earl* cases make it clear that neither the Maryland Wrongful Death Act nor Maryland's substantive law principles of negligence should be applied in this case. Thus, the choice herein is reduced to Virginia law or West Virginia law. As stated above, the normal rule would be to apply West Virginia law since the injury occurred in that state.[1] This Court will therefore apply the West Virginia Wrongful Death Statute in this case.

■■ The complaint does not itself refer to the law of the State of West Virginia. However, the complaint would not seem thereby to be defective since federal courts take judicial notice of

1. \* \* \* Suppose the defendant carelessly does an act in state A which results in harm to the plaintiff in state B. The law of B controls. The plaintiff does not sue the defendant for the latter's negligence, but because the negligence has caused the plaintiff harm. The tort is complete only when the harm takes place, for this is the last event necessary to make the actor liable for the tort. It is the law of the state where this happens which determines whether the harm suffered by the plaintiff is of the sort for which he may recover in an action for damages. Thus, if the defendant in state A fires a gun injuring the plaintiff in state B, the locus delicti is state B. \* \* \* A somewhat similar question arises when an action is brought to recover damages under a death by wrongful act statute. Suppose the defendant, by a negligent act done in state A, starts a force which injures the victim in state B, from which he subsequently dies in state C. Under the statute of which state is an action for damages for the death to be brought? The weight of authority is that the law of B, where the injury takes place, must give the right if recovery is to be had, though the death of the injured party is a condition precedent to its accrual. [H.

Goodrich, Conflict of Laws 263–264 (3d ed. 1949)] [footnotes and citations therein omitted].

See, to the same effect: State v. Eis Automotive Corp., 145 F.Supp. 444 (D. Conn.1956), in which the Federal District Court in Connecticut applied Maryland substantive law (in that case the defendant, a manufacturer of brake cylinders in Connecticut, was sued for negligence by children, residents of New York, of a decedent who was injured and killed in an accident in Maryland with a truck in which the alleged defective brakes had been installed); Rose v. Phillips Packing Co., 21 F.Supp. 485 (D.Md.1937), in which Judge Chesnut applied the Virginia Wrongful Death Act (in that case the defendant, a Maryland food packer, negligently prepared and sold to a Virginia dealer, a can of herring, which in turn was bought and its contents eaten by plaintiff's son, who died by poisoning in Virginia); and Goldsmith v. Martin Marietta Corporation, 211 F.Supp. 91 (D. Md.1962) in which Judge Northrop applied Pennsylvania substantive law in determining that one of the defendant manufacturers was not liable for damages in a wrongful death case growing out of an airplane crash in Pennsylvania. (There is no discussion in that case concerning the state in which the alleged negligent manufacture took place).

state law. *See* 2A J. Moore, Federal Practice ¶ 8.17 [10] (2d ed. 1966). *See also*, 4 Md.Ann.Code art. 35, §§ 47 and 50 (1965 Replacement Vol.), requiring Maryland courts to take judicial notice of the common law and statutes of every state and providing that the party intending to rely on foreign law must give reasonable notice to his adversary either in pleadings or otherwise. Plaintiff would seem to have given reasonable notice to defendant in this case that plaintiff is relying upon West Virginia law. An examination of the relevant statutory law of that state raises the question of whether it permits this suit to be maintained in this Court.

Section 55–7–5 of the West Virginia Code provides, in part:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, * * *. [15 W.Va.Code Ann. § 55–7–5 (1966)]

Section 55–7–6 of the West Virginia Code states, in part as follows:

> Every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered in every such action shall be recovered by said personal representative and be distributed in accordance herewith. In every such

action the jury may award such damages as they deem fair and just, not exceeding ten thousand dollars, and the amount recovered shall be distributed to the parties and in the proportion provided by law for the distribution of personal estate left by persons dying intestate. In addition, the jury may award such further damages, not exceeding the sum of one hundred thousand dollars, as shall equal the financial or pecuniary loss sustained by the dependent distributee or distributees of such deceased person, and shall be distributed as though part of the decedent's estate to decedent's dependent distributees in the proportions provided by the laws of descent and distribution.

> In every such action and in addition to the damages awarded pursuant to the foregoing provisions hereof, the personal representative of the deceased shall be entitled to recover the reasonable funeral expenses of such deceased person and the reasonable hospital, medical and other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death.

> In its verdict the jury shall set forth separately the amount of damages, if any, awarded by it for reasonable funeral, hospital, medical and said other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death, and any such amount recovered for such expenses shall be so expended by the personal representative. * * * [15 W.Va.Code Ann. § 55–7–6 (1966)].[2]

2. Effective June 10, 1965, Section 55–7–6 was amended. Prior thereto, the first paragraph of that statute provided:

 Every such action shall be brought by and in the name of the personal representative of such deceased person, and the amount recovered in every such action shall be distributed to the parties and in the proportions provided by law in relation to the distribution of personal estate left by persons dying intestate. In every such action the jury

may give such damages as they shall deem fair and just, not exceeding ten thousand dollars: Provided, however, that if the plaintiff in such action shall prove by a preponderance of the evidence financial or pecuniary loss sustained by a distributee or distributees of such deceased person, the jury may give such further damages as shall equal such financial or pecuniary loss to such distributee or distributees, not exceeding the sum of twenty-five thousand

Section 44–5–3 of the West Virginia Code provides:

> Notwithstanding any other provisions of law, no person not a resident of this State nor any nonresident banking institution nor any corporation having its principal office or place of business outside of the State of West Virginia shall be appointed or act as executor, administrator, curator, guardian, or committee, except that a testator who is a nonresident of the State at the time of his death may name, and there may be appointed and act, a nonresident as his executor, and except that for the guardian of an infant who is a nonresident of the State there may be appointed the same person who was appointed guardian at the domicile of the infant. [12 W. Va.Code Ann. § 44–5–3 (1966)]

In Rybolt v. Jarrett, 112 F.2d 642 (4th Cir. 1940), plaintiff, an Indiana administrator, brought an action in the Federal District Court for the Southern District of West Virginia under the West Virginia Wrongful Death Statute. The Fourth Circuit held, in an opinion by Judge Dobie, that under West Virginia law, such a suit could not be maintained.

Judge Dobie distinguished Pearson v. Norfolk & Western Ry. Co., 286 F. 429 (W.D.Va.1923), in which a Virginia administrator was permitted to sue under the West Virginia Wrongful Death Act in a Federal District Court in Virginia.[3] In so doing, in *Rybolt*, Judge Dobie referred specifically to Section 44–5–3 of the West Virginia Code[4] which prohibits a foreign administrator from *acting* in West Virginia, even to the extent of maintaining a suit in a West Virginia court or in a Federal District Court in West Virginia. The decision in the *Rybolt* case was recently followed by the Fourth Circuit in a per curiam opinion in Fennell v. Monongahela Power Co., 350 F.2d 867 (4th Cir. 1965), in which the Fourth Circuit noted that the West Virginia denial of the amenability of its courts to foreign administrators suing under its Wrongful Death Act has been made even more emphatic since the *Rybolt* decision, by a 1955 amendment of Section 44–5–3 of the West Virginia Code and by an unbroken line of West Virginia cases which are cited and listed in the *Fennell* opinion.

While no case seems to have posed the identical issue, a combined consid-

---

dollars as the total of all damages recoverable in such action, and the amount so recovered shall not be subject to any debts or liabilities of the deceased.

Thus, before the 1965 amendment, Section 55–7–6 required that an action for damages for wrongful death be maintained by the personal representative of an estate and that the representative's relation to any fund recovered is that of trustee for the next-of-kin. Dunsmore v. Hartman, 140 W.Va. 357, 84 S.E.2d 137 (1954). That section also required, before the revision in 1965, that the amount of any recovery be distributed "to the parties and in the proportions provided by law for the distribution of the personal estate left by persons dying intestate." Wilder v. Charleston Transit Co., 120 W.Va. 319, 197 S.E. 814, 117 A.L.R. 948 (1938).

As amended in 1965, the statute no longer specifically provides that any amount recovered pursuant thereto shall not be subject to any debts or liabilities of the deceased. As far as this Court knows,

no West Virginia court has yet spoken concerning whether the 1965 amendment subjects a wrongful death recovery to the debts or liabilities of the deceased. This Court expresses no view in that connection. Under most wrongful death statutes, such a recovery is not subject to such debts or liabilities. See W. Prosser, Law of Torts 926–27 (3d ed. 1964).

3. In *Pearson*, in 1923, the Court noted that by the express terms of Section 55–7–6, no creditor of the decedent as such had any interest in or right to the recovery sought by the plaintiff. In this connection, see the discussion of the 1965 amendment in Note 2, *supra*, and Note 5, *infra*.

4. That Section in its current form is hereinbefore quoted in the body of this opinion. Prior to 1955, and at the time of the *Rybolt* decision, the words "nor any non-resident banking institution nor any corporation having its principal office or place of business outside of the State of West Virginia" were not included in that Section.

eration of the decided cases and of the applicable Maryland and West Virginia statutes rather clearly suggests that a Maryland administratrix may maintain this suit in this Court under the West Virginia Wrongful Death Act. For the reasons stated hereinbelow, this Court so concludes.

Section 2 of Article 67 of the Maryland Code, as well as Rule Q41 b of the Maryland Rules of Procedure, and the latter's predecessor statutory provision, Article 67, Section 3, have been construed and discussed in great detail in Huber v. Baltimore & Ohio R. R. Co., supra, 241 F.Supp. 646; Olewiler v. Fullerton Supply Co., 162 F.Supp. 563 (D.Md.1958); State of Maryland ex rel. Thompson v. Eis Automotive Corp., supra, 145 F.Supp. 444; King v. Cooper Motor Lines, supra, 142 F.Supp. 405; Kaufmann v. Service Trucking Co., supra, 139 F.Supp. 1.

In the Kaufmann case, Judge Thomsen held that while the provisions of the Virginia Wrongful Death Act prohibited suit by a foreign administrator in the Virginia courts or in the federal courts in Virginia, a foreign administrator could maintain suit in this Court or in a Maryland state court under the Virginia statute. In the King case, faced with opinions of the North Carolina Supreme Court holding that the North Carolina statute had reposed, in the North Carolina courts, tight control over the handling and the distribution of any amounts recovered under the North Carolina Wrongful Death Act, Judge Thomsen held that no one except an executor or administrator or collector qualified in North Carolina could bring such an action in North Carolina or elsewhere under the North Carolina act. In so doing, Judge Thomsen distinguished his

construction of the Virginia act in Kaufmann, in which he had held that no such local control policy existed in Virginia.

West Virginia, like Virginia, does not permit a foreign administrator to bring suit in its courts under its wrongful death statute. However, West Virginia, by its statutes and by the interpretation of those statutes by its courts, does not appear affirmatively to have stated a policy against the maintenance of a suit in a Maryland court by a Maryland administratrix proceeding under the West Virginia act. A review of the Rybolt, Fennell and Pearson decisions in no way disturbs this conclusion. This Court is not informed of any West Virginia legislative or judicial restrictive policy such as Judge Thomsen, in King, found enunciated by North Carolina.[5] Therefore, the West Virginia Wrongful Death Act will be construed herein in accordance with the rule of the Kaufmann case, rather than in accordance with the holding in the King case. Maryland statutory law, as set forth in Section 2 of Article 67, would certainly seem to look toward this result, particularly since West Virginia itself has not spoken to the contrary. As Judge Thomsen stated in the King case: "It is incredible that the Maryland legislature intended to insist that * * * an [Maryland] administratrix go to some other state to sue an interstate * * * [automobile leasing] company which operates in Maryland and has a resident agent in Maryland." (142 F.Supp. at 406).

This Court agrees with counsel for both sides that the two surviving infant stepsons of the deceased cannot recover. See 15 W.Va.Code Ann. § 55–7–6 (1966); 12 W.Va.Code Ann. §§ 42–1–1 and 42–2–1 (1966). Accordingly, defendant's motion to dismiss the suit on behalf of the stepsons is hereby granted.[6]

5. The 1965 amendment of Section 55–7–6 would not appear to constitute a West Virginia legislative pronouncement of a restrictive North Carolina-type policy.

6. Nor could the stepsons recover if the Maryland Wrongful Death Act applied. See 6 Md.Ann.Code art. 67, § 4 (1967

Replacement Vol.); 1 Md.Ann.Code art. 1, § 16 (1957). Thus, this Court is not faced with the problem which confronted Judge Northrop in Huber v. Baltimore & Ohio R. R. Co., 241 F.Supp. 646 (D.Md.1965), in which Maryland policy dictated recovery on behalf of the de-

■ However, defendant cannot sustain its contention that funeral and medical expenses are not recoverable. Section 55–7–6 of the West Virginia Code (quoted hereinabove) provides specifically that plaintiff may recover reasonable funeral and reasonable hospital and medical expenses.

■ On the other hand, defendant correctly states that plaintiff's *ad damnum* clauses are in excess of the amounts recoverable. See Section 55–7–6 quoted hereinabove. Plaintiff seeks total damages of $200,000.[7] Therefore, before proceeding further, plaintiff is required to amend her complaint to conform to the requirements of Section 55–7–6.[8]

■ Plaintiff's right to proceed in this case for the alleged negligence of the defendant Hertz is not barred by lack of privity between the decedent Debbis and Hertz. Third parties injured by an automobile operated by a bailee and negligently maintained by a bailor may prevail against the bailor. Jenkins v. Spitler, 120 W.Va. 514, 199 S.E. 368 (1938); Kaplan v. Stein, 198 Md. 414, 84 A.2d 81 (1951); Restatement (Second) of Torts § 388, comment *d* at 303 (1965); Annot., 46 A.L.R.2d 404, 451 (1956).[9] *Cf.* Williams v. Chrysler Corporation, 148 W.Va. 655, 137 S.E.2d 225, (1964); Shanklin v. Allis-Chalmers Manufacturing Company, 254 F.Supp.

---

cedent's illegitimate child, a Maryland resident, regardless of the law of the District of Columbia where the accident occurred. In that case, this Court, in an action under the Federal Employers' Liability Act, applied Maryland law and held the illegitimate child was a proper claimant.

7. Maryland imposes no dollar maximum recovery in wrongful death cases. 6 Md. Ann.Code art. 67, § 4 (1967 Replacement Vol.). Prior to an amendment effective July 1, 1966, establishing a higher maximum, Virginia's statute set a $35,-000 limit. 2 Va.Code Ann. § 8–636 (1966 Supp.). All relevant events herein occurred in September, 1965. This suit was instituted on September 1, 1966. No determination concerning Virginia law is required in this case since, as discussed hereinabove, the West Virginia Wrongful Death Act is applicable.

8. Even if the rule of Dunsmore v. Hartman, supra, 140 W.Va. 357, 84 S.E.2d 137, was intended not only to limit total recovery of damages but also to prohibit recovery of property damage by Mrs. Debbis, as administratrix of her husband's estate, in an action for wrongful death under the West Virginia statute [see the reference in 15 Michie's West Virginia Code, Annotated (1966), p. 354], a result which seems to fly in the face of the use of the word "other" in the second unnumbered paragraph of Section 55–7–6, the provisions of Rule 18 of the West Virginia Rules of Civil Procedure (1959) permitting a "plaintiff in his complaint * * * [to] join * * * as many claims * * * as he may have against an opposing party" apparently reflect cur-

rent West Virginia policy. In any event, the similar provision of Federal Civil Rule 18(a) would seem to apply in this case.

9. At page 451 of the cited American Law Reports annotation, under the sub-heading, "Liability of third parties," the following is stated:

The duty of reasonable inspection of an automotive vehicle or machine by a bailor for hire before placing it in the hands of the bailee has been recognized in cases involving injury or death to persons other than the bailee or one standing in his place. Such cases have often taken the view, particularly in circumstances involving automobiles and similar vehicles designed for use upon the public highways, that a machine of this nature, while not inherently dangerous, may become so if it is in a defective condition, and that the danger may be not only to the bailee or one standing in his place, but to third persons lawfully using the highways. There is also language in some of the cases which refers to an implied warranty by the bailor for hire that the bailed vehicle or machine is reasonably fit for the use intended. In either event, it appears unquestioned that a bailor for hire of an automotive vehicle or machine must exercise ordinary care in inspecting the bailed chattel prior to placing it in the hands of the bailee, and that he will be responsible for injury to or death of third persons proximately caused by a defective condition of the bailed article which a reasonable inspection would have detected.

223, 230–231 (S.D.W.Va.1966); Mac-Pherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 (1916).[10] However, the lack of privity between Debbis and Hertz would seem to bar plaintiff from maintaining an action for the alleged breach by Hertz of an implied warranty of fitness. Such actions historically have required privity, and such is rather clearly the law of Maryland today. Blum v. Richardson-Merrell, Inc., Civil No. 16203 in this Court, filed September 8, 1965 (Northrop, J.), citing Woolley v. Uebelhor, 239

---

10. The Supreme Court of Appeals of West Virginia has not yet applied the rule stated in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916), eliminating the privity requirement in a negligence action by a third party against a manufacturer. See Williams v. Chrysler Corporation, 148 W.Va. 655, 137 S.E.2d 225 (1964), in which the West Virginia Court did not find it necessary to reach the precise issue. The Federal District Court for the Southern District of West Virginia, in a case subsequent to *Williams,* stated that

> We do not find that the Supreme Court of Appeals of West Virginia has as yet made a clear-cut definitive ruling on the question of privity requirement in the area of a non-inherently or non-imminently dangerous instrumentality. We find, however, that if this case, where negligence is the gravamen of the complaint, were presented to that Court upon the record now presented to us, it would adopt the modern view by holding that such a showing is not a requirement for maintenance of the action. [Shanklin v. Allis-Chalmers Manufacturing Company, 254 F.Supp. 223, 231 (S.D.W.Va.1966)].

Further, the Supreme Court of Appeals of West Virginia, as early as 1938, without discussing privity, held that a

> gratuitous bailor * * *, knowing of a defect in an automobile rendering it unfit for use, is liable for injuries to third persons, who are without fault themselves, [and incur injuries] proximately resulting from the defect. [Jenkins v. Spitler, 120 W.Va. 514, 519, 199 S.E. 368, 371 (1938)].

*A fortiori* a bailor for profit would seem so liable. The decisions of the Courts of other states cited by the West Virginia Court in *Jenkins,* at p. 370, in support of the above-quoted statement, point to the conclusion that West Virginia would reach this result. In Saunders System Birmingham Co. v. Adams, 217 Ala. 621, 624, 117 So. 72, 73, 61 A.L.R. 1333 (1928), the Court stated that

> In view of the fact that the automobile was let for use on the streets and highways of the neighborhood, and that a machine of that sort without brakes or with defective and inefficient brakes when used on the highways, * * *, is a dire menace to every one who may come into its close vicinity, we have no difficulty in reaching the conclusion that one who lets an automobile for hire with knowledge or notice that it will be used upon the public highways, thus involving probable danger to others than the driver, is under duty to inspect the machine to the end that such danger may not arise.

In another case cited by the West Virginia Court in *Jenkins,* the plaintiffs, husband and wife, sued to recover damages for personal injuries suffered by the wife when she was struck by an automobile owned by the defendant and driven by one to whom the defendant had rented the car for hire. The plaintiffs alleged that the automobile had been rented by the defendant with knowledge that the brakes were in a defective condition. In affirming the judgment for the plaintiffs, the Court stated that

> The bailment or hiring contemplated the operation of the machine on the highway, and defendant owed a duty to other users of the highway to see that the car was reasonably safe for that purpose. [Trusty v. Patterson, 299 Pa. 469, 472, 149 A. 717, 718 (1930)].

In another case cited by the West Virginia Court, the plaintiff sued the defendant, a keeper of a public garage, alleging that he had negligently rented an automobile to a person and knew, or by the exercise of reasonable care should have known, that the car had a defective steering gear. In overruling the trial court's action in sustaining the defendant's demurrer, the Court stated as follows:

> Automobiles are in constant use upon the public highways, and a garage keeper who lets automobiles for hire owes a duty to the public to the extent that he is bound to use ordinary care to see that the automobile he lets to be operated upon the public highways has its steering gear in a reasonably safe condition, as injuries to other persons lawfully using the highways is reasonably to be foreseen as the probable result of a defective steering gear. [Collette v. Page, 44 R.I. 26, 30, 114 A. 136, 138, 18 A.L.R. 74 (1921)].

Md. 318, 211 A.2d 302 (1965); Vaccarino v. Cozzubo, 181 Md. 614, 31 A.2d 316 (1943), and Atwell v. Pepsi-Cola Bottling Co., 152 A.2d 196 (D.C.Munic. Ct.App.1959). Judge Northrop, in *Blum*, after reviewing the New Jersey cases which have eliminated the requirement of privity in a warranty action and referring to the trend in a number of jurisdictions toward that result, concluded that Maryland still required the exist-ence of privity in cases such as the one at bar.[11]

While the specific question has apparently not yet arisen in West Virginia, the present state of West Virginia statutory and case law indicates that West Virginia, like Maryland, has not eliminated the privity requirement in connection with the liability of the lessor of a chattel for breach of an implied warranty.[12]

11. The Uniform Commercial Code was enacted in Maryland, effective February 1, 1964. Section 2–318 of Article 95B of the Annotated Code of Maryland eliminates the requirement of privity only with regard to a buyer's family, household and guests. The language of this section of the Maryland Code and of paragraph 3 of the Official Comment to that section are identical with that of the comparable section and comment thereto in the West Virginia Code. See Note 12, *infra.*

12. See Note 10 *supra.* This conclusion would also seem buttressed by the enactment of the Uniform Commercial Code in West Virginia, effective July 1, 1964. Section 46–2–318 of the West Virginia Code provides:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section. [13 W.Va.Code Ann. § 46–2–318 (1966)].

The word "seller" means a person who sells or contracts to sell goods. Section 46–2–103(1) (d) of the West Virginia Code. A "buyer" means a person who buys or contracts to buy goods. Section 46–2–103(1) (a) of the West Virginia Code.

The Official Comment under Section 46–2–318 states in part as follows:

2. The purpose of this section is to give the buyer's family, household and guests the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to 'privity'. It seeks to accomplish this purpose without any derogation of any right or remedy resting on negligence. * * *

3. This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.

In comparing the Virginia statute discussed in Note 15, *infra,* which was substituted by the Virginia legislature in place of the uniform provision (Section 2–318) of the Uniform Commercial Code, one author has stated that

The glaring contrast between * * * [the Virginia] provision and the uniform section adopted in West Virginia and other Code states [including Maryland, see Note 11, *supra*] demonstrates beyond question the distinction between the neutral position of the Commercial Code and the consumer-prone attitude of the Virginia law.

W. Lorenson, Product Liabilities and Disclaimers in West Virginia, 67 W.Va. L.Rev. 291, 299 (1965).

A Case Comment in 65 W.Va.L.Rev. 326, 327 (1963) states that

while the West Virginia court has never specifically decided a case on this point there is dictum that a seller's implied warranty does not inure to the benefit of parties other than the purchaser. Burgess v. Sanitary Meat Market, 121 W.Va. 605, 5 S.E.2d 785 (1939).

Citing the same case, that Comment (at p. 329) also expresses the view that

it seems doubtful that they [the West Virginia Court] will expand upon the action of the legislature [in enacting the Uniform Commercial Code] and further extend the protection of * * * [that] Code.

The Comment concludes by expressing the view that principles of statutory construction should not cause the West Virginia Court to refuse to extend the approach of doing away with the necessity

■ While breach of an implied warranty is basically a contract rather than a tort action, it, nevertheless, has roots which spring essentially from a tort background. · W. Prosser, Law of Torts 651–52 (3d ed. 1964).[13] Therefore, Maryland, applying its conflicts rules, might well look to the law of West Virginia to determine, in connection with the warranty allegation of the complaint, whether privity between the decedent Debbis and the defendant Hertz is necessary. On the other hand, Maryland follows the general rule of construing a contract in accordance with the law of the state where the contract was made. Mackubin v. Curtiss-Wright Corporation, 190 Md. 52, 57 A.2d 318 (1948); Restatement of Conflict of Laws § 332 et seq. (1934). It is, therefore, possible that Maryland conflicts principles require this Court to look to Virginia, rather than West Virginia, in determining whether such privity is a requirement insofar as this suit is grounded in contract rather than tort, and to look to West Virginia with regard to the tort allegations. A further alternative might require this Court, if it looks to West Virginia with regard to all substantive law aspects of this case, to apply West Virginia conflicts rules and then to look from West Virginia to Virginia in order to construe a contract made in Virginia. This last alternative would result in an application of the doctrine of renvoi, contrary to the principles set forth in the Restatement of Conflict of Laws §§ 7, 8 (1934).[14] But the short of the matter is that privity between the decedent Debbis and the defendant Hertz is required in connection with a suit for breach of warranty, whether West Virginia, Virginia or Maryland law is applied. Maryland and West Virginia law have been discussed hereinabove. With regard to Virginia law, see Harris v. Hampton Roads Tractor & Equipment Co., 202 Va. 958, 121 S.E.2d 471 (1961); Gleason & Co. v. International Harvester Co., 197 Va. 255, 88 S.E.2d 904 (1955).[15] Therefore, it is

of privity in warranty actions. The West Virginia Court's decision in Williams v. Chrysler Corporation, supra, Note 10, and the decision in Shanklin v. Allis-Chalmers Manufacturing Company, supra, Note 10, were handed down respectively in 1964 and 1966, after the aforesaid 1963 Comment was published. For a critical view of the *Williams* Case, see W. Lorenson, Product Liabilities and Disclaimers in West Virginia, supra.

13. *See also* Comment, 65 W.Va.L.Rev. 326, 328 (1963):

Originally, an action grounded on breach of warranty, sounded in tort rather than contract. Ames, History of Assumpsit, 2 Harv.L.Rev. 1, 8 (1888). It was not until late in the eighteenth century that a contract action would lie for breach of warranty. Today, because of this mistake in legal history, warranty has become a hybrid of both tort and contract and may operate between parties not in privity of contract.

14. Section 7 of the Restatement of Conflict of Laws rejects application of the renvoi except for two situations listed in Section 8. No reason is perceived why there should be any exceptions.

Almost all writers oppose application of the renvoi. [E. Stimson, Conflict of Laws 77 (1963)].

The two exceptions provided in the Restatement have no relevance to this instant case.

15. In 1962, the following statute was enacted in Virginia:

Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods; * * *. [2 Va.Code Ann. § 8-654.3 (1963 Supp.)].

The above statute which was repealed in 1964, effective January 1, 1966, and reenacted without change in the Uniform Commercial Code of Virginia, effective January 1, 1966 [2A Va.Code Ann. § 8.2-318 (1965 Added Vol.)], abolishes the privity requirement with regard to actions against manufacturers or sellers (i. e., a seller is any person who is in the business of selling goods). See E. Em-

not necessary to decide which of the three states' substantive law principles govern the implied warranty question.[16]

Because the substantive law of all of the states possibly involved in this case, namely, West Virginia, Virginia and Maryland, require privity in order to maintain an action for breach of an implied warranty, defendant's *motion* to dismiss that part of the plaintiff's complaint which pertains to the alleged warranty by defendant Hertz is granted.

 Defendant has also moved to dismiss plaintiff's complaint *in toto* under Federal Rule 19(b),[17] apparently on the grounds that Staton and Yurisic, both Virginia residents, are not and cannot be parties to this suit. A dismissal may be obtained under Rule 19(b) only upon a showing that one not a party to the action is "indispensable" to its maintenance, and then only if certain other

roch, Statutory Elimination of Privity Requirement in Products Liability Cases, 48 Va.L.Rev. 982, 986 (1962). However, it seemingly has no effect upon lessors or bailors.

16. It is also not necessary herein to reach the question of whether a cause of action for breach of an implied warranty survives the death of a person who might be entitled to assert such an action [See 1 C.J.S. Abatement and Revival §§ 137, 138 (1936)] or whether, in the alternative, an action for breach of warranty may be included under the aegis of a *statutory* wrongful death action pursuant to the statutes of one or more of the states of West Virginia, Virginia or Maryland. *See* 2 F. Harper & F. James, The Law of Torts § 28.21 (1956). This Court therefore expresses no views on those questions.

17. Defendant additionally argues that the within action can only be brought in Virginia, citing 28 U.S.C. § 1391(f) which provided that "a civil action on a tort claim arising out of * * * repair * * * [or] maintenance * * * of an automobile *may* be brought in the judicial district wherein the act or omission complained of occurred. * * *" (emphasis added). Enacted in 1962 and 1963, Section 1391(f) was repealed by the Congress in November 1966. Public Law 89–714, 89th Congress, H.R. 7382. In any event, Section 1391(f) was permissive, not compulsory.

elements are present.[18] Defendant has not stated with any particularity why this Court should consider either Staton or Yurisic to be an indispensable party.[19] Plaintiff's complaint states a cause of action against defendant Hertz based upon Hertz' alleged negligence. The possibility that Staton or Yurisic, or both of them, may also have been negligent does not make either of them an indispensable party herein. Kerr v. Compagnie de Ultramar, 250 F.2d 860, 863 (2d Cir. 1957); Sternaman v. Macloskie, 37 F.R.D. 316, 318 (E.D. S.C.1965). "Acts of tort feasors [such as Staton and Yurisic may be if the negligence of each of them was the proximate cause of any of the damages alleged in this case] are joint and several. Either of them can be sued separately." United States v. Goodman, 287 F.2d 871, 873 (5th Cir. 1961).[20]

18. The subdivision [(b) of Rule 19] uses the word 'indispensable' only in a conclusory sense, that is, a person is "regarded as indispensable' when he cannot be made a party and, upon consideration of the factors abovementioned, it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it.
Advisory Committee on Rules for Civil Procedure, Note to Amended Rule 19, reproduced in 3 J. Moore, Federal Practice 16, 20 (1966 Supp.).

19. Defendant's entire argument with regard to dismissal under Rule 19(b) is set forth in its memorandum in support of its motion to dismiss, and reads as follows:
It is respectfully suggested to this Honorable Court that inasmuch as all of the parties who are or should be Defendants are residents of the State of Virginia and are suable in the State of Virginia by the Plaintiffs in proper form; that under Rule 19(b) of the Federal Rules of Civil Procedure this cause should be dismissed, and the Plaintiffs should bring their suit within the State of Virginia.

20. The *Kerr, Sternaman* and *Goodman* cases were decided under Rule 19 prior to its amendment on February 28, 1966, effective July 1, 1966. The Advisory Committee, however, has indicated that such cases are of continued validity under Rule

No opinion is expressed as to whether Staton or Yurisic might be joined in this action, upon a proper motion and showing, under either Federal Civil Rule 14, relating to third-party practice, or under Rule 19 of the Federal Civil Rules. In any event, this action cannot be dismissed under Rule 19(b) unless the joinder of the person or persons involved (here Staton and Yurisic) is not possible because one or both of them is not "subject to service of process" or such joinder will "deprive * * * [this] court of jurisdiction over the subject matter of the action," neither of which conditions appear to exist in this case. The joinder of Staton or Yurisic, or both of them, herein, if such should be deemed appropriate by this Court at any stage of this proceeding, would seemingly not deprive this Court of jurisdiction. Also, both Staton and Yurisic would appear to be subject to service of process.

Rule 4(f) of the Federal Rules of Civil Procedure provides:

All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, * * *. In addition, persons who are brought in as parties pursuant to Rule 14,[21] or as additional parties to a pending action or a counterclaim or cross-claim therein pursuant to Rule 19, may be served in the manner stated in paragraphs (1)–(6) of subdivision (d) of this rule[22] at all places outside the state * * * that are not more than 100 miles from the place in which the action is commenced, * * *.

■ If, as defendant Hertz maintains, Staton and Yurisic reside respectively in Arlington and Falls Church, Virginia, both of which are not more than 100 miles from Baltimore, Maryland, defendant would not be entitled to dismissal of this action pursuant to Rule 19(b), even if Staton or Yurisic, or both of them, were (which neither is) an indispensable party under Rule 19. *See* 2 J. Moore, Federal Practice ¶ 4.42 [2], at 1293.39 (2d ed. 1966); 3 J. Moore, Federal Practice 149–150 (Supp.1966).

Defendant has urged, in the alternative, that this action be transferred to an appropriate federal court in Virginia, pursuant to 28 U.S.C. § 1404(a) providing that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

■ The burden of establishing that an action should be transferred rests heavily on the moving party. Development Co. of America v. Insurance Co. of North America, 249 F.Supp. 117 (D.Md.1966). In ruling on defendant's request for a change of venue, the plaintiff's choice of venue should not be lightly disturbed. See Akers v. Norfolk & Western Ry. Co., 4th Cir., 378 F.2d 78, May 5, 1967; 1 J. Moore, Federal Practice ¶ 0.145 [5], at 1777–78 and N. 5 (2d ed. 1964). While Staton and Yurisic are residents of Virginia and the rental contract was executed in Virginia, those circumstances do not warrant a transfer to Virginia, under the facts of this case, in which a Maryland widow and her children are the true parties plaintiff and the accident occurred in a third state, West Virginia.

---

19 as so amended. The Committee's Note in this connection reads:
> The subdivision (a) [of Rule 19, which sets forth factors relative to the question of dismissal under Rule 19(b)] definition of persons to be joined is not couched in terms of the abstract nature of their interests—'join,' 'united,' 'separable,' or the like. * * * It should be noted particularly, however, that the description is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several'

liability is merely a permissive party to an action against another with like liability. * * *
> Advisory Committee on Rules for Civil Procedure, Note to Amended Rule 19, reproduced in 3 J. Moore, Federal Practice 16, 18 (1966 Supp.).

21. Rule 14 relates to Third Party Practice.

22. Subdivision (d) is entitled "Summons: Personal Service."

Plaintiff is given fifteen (15) days to amend the *ad damnum* clauses of the complaint in accordance with this opinion. Thereafter, the Court will sign an appropriate order denying defendant's motion to dismiss except that the Court will grant the motion to dismiss with regard to (1) the claims on behalf of the stepsons, and (2) the allegations of breach of an implied warranty, for the reasons hereinabove set forth. Defendant is directed to prepare an appropriate order.